**Rigoberto GUERRA, Jr., Plaintiff,**

**v.**

**Hugh F. SCRUGGS, et al., Defendants.**

**No. 90–81–CIV–3–H.**

United States District Court,
E.D. North Carolina,
Fayetteville Division.

Sept. 27, 1990.

Mark L. Waple, Hutchens & Waple, Fayetteville, N.C., for plaintiff.

LTC Mark A. Steinbeck and Captain Raymond J. Jennings, Office of the Judge Advocate, Dept. of the Army, Washington, D.C., for defendants.

MALCOLM J. HOWARD, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction pursuant to Rule 65, Fed.R.Civ.P. Plaintiff instituted the present action by a complaint filed on August 15, 1990, in which he seeks injunctive and declaratory relief to prevent his early discharge from active duty with the United States Army for testing positive on a urinalysis test and for failing to attend a P.T. formation due to alleged alcohol intoxication without being given a hearing prior to such discharge.

On August 17, 1990, a hearing was held upon plaintiff's motion for a temporary re-straining order. All parties were represented by counsel and presented evidence and oral argument. The court rendered a ruling from the bench in which it granted plaintiff's motion for a temporary restraining order. On August 21, 1990, the court entered a written order memorializing its grant of plaintiff's motion for a temporary restraining order.

On August 30, 1990, a hearing was held upon plaintiff's pending motion for a preliminary injunction. All parties were represented by counsel and presented evidence and oral argument. After carefully reviewing the record in the case at bar and hearing oral argument, the court makes the following:

## FINDINGS OF FACT

1. Plaintiff is a Private currently serving on active duty with the United States Army at Fort Bragg, North Carolina. On April 4, 1988, he enlisted for active duty with the United States Army for a 3–year term of enlistment. This 3–year term of service will expire on April 4, 1991.

2. On April 23, 1990, plaintiff tested positive for a controlled substance. Specifically, plaintiff tested positive for cocaine.

3. On May 21, 1990, plaintiff received nonjudicial punishment pursuant to the provisions of Article 15 of the Uniform Code of Military Justice for the alleged offense of wrongful use of illegal substances (cocaine). As punishment, plaintiff was reduced to E–1, received a restriction of 45 days and extra duty, and had half of his monthly pay forfeited for a period of two months.

4. On or around July 16, 1990, defendants formally notified plaintiff that he was to be separated from active military duty prior to the normal expiration of his service pursuant to Army Regulation 635–200, Chapter 14, paragraph 14–12c(2). Defendants informed plaintiff that he was being separated from active duty for the reasons that plaintiff had tested positive for a controlled substance and had failed to attend a P.T. formation due to alcohol intoxication.

5. Defendants further informed plaintiff that he would receive a discharge characterization from the armed forces of the United States equivalent to a "general discharge under honorable conditions" and that the reason to be given for such separation would be "misconduct-abuse of illegal drugs."

6. Plaintiff was notified that *because he had not accumulated six years or more of active and reserve military service prior to the time of plaintiff's separation from active duty, he was not entitled to request and receive a hearing of his case before an administrative elimination board.* Section II, paragraph 2–2d of Army Regulation 635–200 provides that a serviceman is entitled to receive a hearing before an administrative elimination board only if he has accumulated 6 or more years of total active and reserve service on the date of initiation of recommendation for separation.

7. On August 1, 1990, plaintiff formally requested an administrative hearing of his case prior to being separated from active duty. On or around August 6, 1990, defendants denied such request and approved the release of plaintiff from active duty. Defendants ordered that plaintiff be discharged no later than August 24, 1990.

8. On August 15, 1990, plaintiff brought the present complaint in which he alleges that the procedures by which defendants are attempting to separate him from active duty with the United States Army amount to a violation of his due process rights pursuant to the Fifth Amendment of the U.S. Constitution and amount to a violation of his equal protection rights.

## DISCUSSION

I. *General Standard for a Preliminary Injunction*

■ In this circuit, the general standard by which a court must evaluate the propriety of a preliminary injunction is basically a consideration of those factors originally enunciated in *Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.,* 550 F.2d 189 (4th Cir.1977). The question of whether a preliminary injunction should issue turns upon an assessment of (1) plaintiff's likelihood of success on the merits; (2) the likelihood that plaintiff will suffer irreparable injury without an injunction; (3) the likely injury that defendant will sustain upon issuance of an injunction; and (4) the public interest. *Jones v. Board of Governors of the University of North Carolina,* 704 F.2d 713, 715 (4th Cir.1983). If the balance of hardships tips decidedly in the plaintiff's favor, an injunction preserving the status quo should issue "if, at least, grave or serious questions are presented." *North Carolina State Ports Authority v. Dart Containerline Co., Ltd.,* 592 F.2d 749, 750 (4th Cir.1979).

(A) *Irreparable Injury to Plaintiff*

■ Under *Blackwelder,* the first step for the court is to balance the "likelihood" of irreparable injury to the plaintiff against the "likelihood" of harm to the defendant. In the case at bar, plaintiff faces an imminent separation from the Army with a "general discharge" and will be further characterized as a serviceman separated for "misconduct-abuse of illegal drugs." The imposition of a general discharge has been recognized as imposing a stigma on the recipient since any discharge characterized as less than honorable may result in serious injury to the recipient's reputation and subsequent livelihood. *See Bland v. Connally,* 293 F.2d 852, 858 (D.C.Cir.1961).

Without injunctive relief, plaintiff argues that he will lose the opportunity to build a record, will lose the opportunity to have the drug test data scrutinized by his own experts, will lose the opportunity to require witnesses to appear on his behalf, and will be stigmatized for future employment in the public and private sector. Such stigmatization will adversely affect plaintiff's efforts to re-establish himself in civilian life after his discharge. Characterization as a drug abuser will lead many, if not most, employers to reject him. Employment problems generated by characterization as a drug abuser may lead to serious financial difficulties and inability to meet financial obligations.

Defendants strenuously argue that plaintiff has failed to show that any harm suffered would be irreparable. Specifically, defendants argue that loss of income and damage to reputation are not the types of harm deemed to be irreparable. Defendants contend that any possible injuries are monetary in nature for which adequate compensatory or other corrective relief are available through administrative appeals or litigation. Defendants rely on *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) as support for their argument.

In *Sampson*, a probationary employee with the Public Buildings Service of the General Services Administration filed a complaint in federal court seeking injunctive relief against her dismissal pending an administrative appeal to the Civil Service Commission. The U.S. Supreme Court held that a district court has the authority to grant interim injunctive relief to a discharged government employee; however, the Court determined that under the standards that govern the issuance of such relief, the trial court's issuance of a temporary injunction could not be sustained.

The *Sampson* Court based its holding on the trial court's finding of irreparable harm. The Court stated that it was "somewhat puzzled about the basis for the District Court's conclusion that [plaintiff] 'may suffer immediate and irreparable injury.'" *Sampson v. Murray*, 415 U.S. at 88–89, 94 S.Ct. at 952. Specifically, the Court held that loss of income and damage to reputation as a result of challenged agency action in the discharge of a probationary government employee are not the types of irreparable injury that are a necessary predicate to the issuance of injunctive relief against discharge pending review by the Civil Service Commission. 415 U.S. at 91–92, 94 S.Ct. at 953.

This court finds *Sampson* to be distinguishable from the case at bar. Admittedly, the Court in *Sampson* was not particularly sympathetic to finding irreparable harm in the context of a discharge from employment or to interference with an administrative process or personnel decisions.

In *Sampson*, however, there were serious deficiencies with respect to the trial court's finding of irreparable harm. The Supreme Court pointed out that "no witnesses were heard on the issue of irreparable injury, that [plaintiff's] complaint was not verified, and that the affidavit she submitted to the District Court did not touch in any way upon considerations relevant to irreparable injury." 415 U.S. at 88, 94 S.Ct. at 952.

Furthermore, the Court in *Sampson* specifically noted that it was not ruling out findings of irreparable harm in exceptional cases. 415 U.S. at 91–92, n. 68, 94 S.Ct. at 953, n. 68. This court concludes that the present action is such a case. There is evidence in the record which indicates that there would be an extended delay between plaintiff's separation and review, if any, by the Army Board for the Correction of Military Records ("ABCMR"). Such delay could even amount to a couple of years. *See* Howland affidavit. During the interim, plaintiff would be forced to seek employment with a military service record that in actuality adjudges him "guilty" of controlled substance abuse.

Defendants further argue that where a plaintiff may obtain complete retroactive relief in administrative proceedings or subsequent judicial review, he has not shown the kind of irreparable injury sufficient to justify the issuance of a preliminary injunction. Apparently, it is within the authority of the ABCMR to grant plaintiff a full evidentiary hearing and to afford plaintiff all of the relief he seeks. However, there is no guarantee that plaintiff will be afforded a full hearing. *See Flute v. United States*, 210 Ct.Cl. 34, 535 F.2d 624, 628 (1976). (A hearing on application for correction of military records is not required by 10 U.S.C. § 1552, but is within the discretion of the Board for Correction of Military Records; and if a hearing is granted, the Secretary concerned has discretion to determine the scope of review.) In fact, plaintiff has furnished statistics showing that the ABCMR rarely conducts hearings on applications before it. *See* Plaintiff's Memorandum in Support of Motion for Temporary Restraining Order and Preliminary and Permanent Injunction. This

court therefore concludes that plaintiff will suffer irreparable injury without the issuance of an injunction.

### (B) *Likelihood of Harm to Defendants*

This court must next consider the likelihood of harm to defendants if the requested relief is granted. This court finds that defendants have not adequately demonstrated that a delay in plaintiff's discharge will cause them any meaningful harm. Defendants argue that issuance of injunctive relief in this case would prohibit the Army from determining the composition of its force to insure the readiness and competency of that force. Defendants further argue that this court should not attempt to "run" the military.

In response, this court is not attempting to manage the military. This court is fully cognizant of the fact that the military has much greater expertise than the judiciary in insuring the readiness and competency of our nation's armed forces. However, this court is empowered and is responsible for guarding the Constitution and for insuring that an individual's constitutional rights are not violated in any form. The preservation of an individual's constitutional rights is the goal in the present action, not the management of the military or interference in the military's disciplinary proceedings so long as due process rights are fully afforded and protected.

### II. *Justiciability of a Claim Involving the Internal Affairs of the Military*

■ The court is mindful of the deference given by the judiciary in cases involving interference with the internal affairs of the military. *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953). *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971) is the leading case which outlines when military internal affairs should be subjected to judicial review. The *Mindes* test is as follows:

> [A] court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applica-

ble statutes or its own regulations, and (b) exhaustion of available intraservice measures.

453 F.2d at 201. *See also, Williams v. Wilson,* 762 F.2d 357 (4th Cir.1985) (adopting the *Mindes* test).

The *Mindes* court further directed the balancing of four policy considerations in determining the justiciability of the claim:

> (1) The nature and strength of the plaintiff's challenge to the military determination; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved.

453 F.2d at 201.

### (A) *Allegation of the Violation of a Constitutional Right*

It is clear that plaintiff has satisfied the first requirement under *Mindes.* Plaintiff has alleged the violation of a constitutional right. *See Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.") Defendants admit that plaintiff has adequately alleged the deprivation of a constitutional right.

### (B) *Exhaustion of Administrative Remedies*

■ Defendants argue, however, that plaintiff has failed to satisfy the second *Mindes* requirement. Defendants contend that plaintiff must exhaust his available intraservice administrative remedies prior to seeking relief in this court. Defendants point out that plaintiff has not filed for a review of his claims before the ABCMR. Defendants argue that the ABCMR has the authority to consider plaintiff's claims and provide the needed relief.

Defendants are correct that a plaintiff is normally required to exhaust administrative remedies prior to seeking relief through the court system. *Williams v. Wilson,* 762 F.2d 357, 360 (4th Cir.1985).

On the other hand, *Williams* did not address a recognized exception to the exhaustion requirement, that is, where further appeals would be futile, the exhaustion requirement may be relaxed. *See Committee for GI Rights v. Callaway*, 518 F.2d 466, 474 n. 20 (D.C.Cir.1975). *See also Dooley v. Ploger*, 491 F.2d 608, 614–15 (4th Cir.1974). (While exhaustion applies as long as there is an available, unused remedy which may result in relief, exhaustion is not required where the outcome would be predictably futile.) This court finds that in the case at bar it would be futile for plaintiff to appeal to the ABCMR; therefore, plaintiff will not be required to exhaust his administrative remedies prior to seeking relief through litigation channels.

First, as explained previously, plaintiff is not guaranteed a hearing before the ABCMR. Furthermore, an applicant for relief before the ABCMR has no access to compulsory process or discovery procedures. As such, the applicant has very little, if any, opportunity to sustain the burden of proof he must carry in order to be granted relief under 10 U.S.C. § 1552.

More importantly, this case differs from the factual situation in *Williams*. In *Williams*, the plaintiff, who was a commissioned officer in the United States Army for over thirty-two years, was separated from the West Virginia Army National Guard pursuant to a regulation allowing review for selective retention of officers who have completed twenty years of qualifying service for retirement pay. The plaintiff filed a claim in which he alleged that the West Virginia National Guard had violated its own regulations when it impanelled the review board in his case.

The *Williams* court required the plaintiff to exhaust his administrative remedies prior to seeking relief in federal court. The court based its holding on the fact that the ABCMR has far greater experience than a federal court in interpreting the content and effect of military regulations and should be allowed to exercise its expertise. *Williams v. Wilson*, 762 F.2d at 360. *See also Navas v. Vales*, 752 F.2d 765, 769–70 (1st Cir.1985).

In the case at bar, plaintiff attacks the constitutionality of the actual regulations by which defendants are attempting to separate him. The authority of the Department of Defense Correction Boards, including the ABCMR, however, does not include declaratory relief and does not include the authority to change Army regulations and Department of Defense Directives. 10 U.S.C. § 1552. *See also Glines v. Wade*, 586 F.2d 675, 678 (9th Cir.1978). (The ABCMR has authority to "correct an error or remove an injustice", not to declare the law.)

Plaintiff does not claim that defendants have failed to follow the regulations in his discharge from active duty. His claims thus do not involve the interpretation of the content and effect of military regulations. Rather, such claims involve purely legal issues and do not involve matters that require the special expertise of the military.

This court admits that it is troubled by Army Regulation Chapter 2, 635–200(2–2)(d), the regulation which limits the availability of a hearing before an administrative elimination board to those enlisted personnel who have served six or more years of active and reserve military service prior to separation. Defendants have failed to offer a satisfactory explanation as to why those personnel who have served six or more years would receive a hearing, and yet those servicemembers who have served less than six years would not be given the same protections.

(C) *A Review of Policy Considerations for Determining the Justiciability of a Claim Involving the Internal Affairs of the Military*

Having concluded that plaintiff has satisfied the first two requirements under *Mindes*, this court must now review the four policy considerations delineated in *Mindes* in order to determine whether the claims at bar may be properly considered by a federal court. As stated previously, these four factors are:

(1) The nature and strength of the plaintiff's challenge to the military determina-

tion; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved.

453 F.2d at 201.

### (1) *Injury to Plaintiff and the Extent to Which the Exercise of Military Expertise or Discretion is Involved*

The court has already discussed the potential injury to the plaintiff in regard to the balancing test necessary for issuance of an injunction under *Blackwelder.* This court has also determined that the claims at bar involve legal issues and do not involve matters requiring the special expertise of the military.

### (2) *The Type and Degree of Anticipated Interference with the Military Function*

As far as the type and degree of anticipated interference with the military function, defendants vociferously argue that issuance of injunctive relief and the requirement of a hearing in the case at bar would require the military to grant hearings each and every time a soldier is discharged. This argument is without merit.

Requiring a hearing in the present case would not mean that the military must hold hearings in each case in which a serviceman is discharged. Rather, the requirements of due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents of States Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). A person deprived of either of these interests must be afforded some kind of a hearing. *Id.* at 570 n. 7, 92 S.Ct. at 2705 n. 7. Not every discharge would implicate a property or liberty interest.

Furthermore, where a hearing is required, due process does not demand a full-blown evidentiary hearing or trial. Rather, for due process purposes, an individual must be given notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *quoting, Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

### (3) *Nature and Strength of Plaintiff's Challenge to the Military Determination*

The court must next review the fourth policy consideration delineated in *Mindes,* that is, the nature and strength of the plaintiff's challenge to the military determination. Defendants argue that plaintiff cannot demonstrate that he possesses a property or liberty interest sufficient to invoke a right to due process within the meaning of the Fifth Amendment.

### (a) *A Property Interest in Continued Employment with the Military*

This court will first determine whether plaintiff has a property interest in his continued employment with the military, that is, completion of his three year tour of duty as agreed upon at enlistment. As stated by the Court in *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972):

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709.

*Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) indicates that there is no rigid limit to the sources of such property rights. Property rights may derive from statutes, explicit contracts, or state-declared policies. There are still limits, however, on those things that can be considered "property rights." There must be some reasonably identifiable source from which these rights spring. They cannot emanate from "a mere subjective expectancy." *Perry v. Sindermann,* 408 U.S. at 602–03, 92 S.Ct. at 2700. The law

still recognizes "that something cannot spring from nothing." *Sims v. Fox*, 505 F.2d 857, 862 (5th Cir.1974).

Turning to the case at bar, there is no evidence in the record that plaintiff's contract expressly granted him continued employment in the military. Neither does plaintiff point to any governmental regulation or policy that led him to believe that he had a property right in continued employment in the military.

Alternatively, plaintiff argues that he had a reasonable expectation of career advancement, pay and allowances, proficiency pay, and freedom from arbitrary adverse personnel actions. However, as explained in *Perry*, a property interest cannot emanate from a "mere subjective expectancy." 408 U.S. at 602–03, 92 S.Ct. at 2700. This court therefore concludes that plaintiff has no property interest in continued military employment because there is no source for it other than his own "reasonable expectation."

(b) *A Liberty Interest in Continued Employment with the Military*

The court must next determine whether plaintiff has a liberty interest in continued employment in the military. "Liberty" as referred to in the Due Process Clause of the Fourteenth Amendment includes "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge ... and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men." *Board of Regents of State Colleges v. Roth*, 408 U.S. at 572, 92 S.Ct. at 2707, *quoting, Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923).

From this concept springs the principle that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). "[A] 'stigma' may attach to a servicemember's discharge either from the characterization of the discharge or from the reasons recorded for the discharge, if such reasons present a 'derogatory connotation to the public at large.'" *Casey v. United States*, 8 Cl.Ct. 234, 242 (1985), *quoting, Birt v. United States*, 180 Ct.Cl. 910, 914 (1967).

Defendants argue that the mere presence of derogatory information in an employer's confidential files does not infringe a protected liberty interest. Defendants point out that there has been no allegation that the Army is going to publicize the fact that plaintiff has been discharged from the service or the reasons for that discharge. Defendants argue that the Army, by its own regulations, is precluded from disclosing the reason for discharge to any but authorized agencies. Defendants contend that in the absence of a reasonably anticipated likelihood that the Army, notwithstanding its regulations to the contrary, would reveal the reasons for plaintiff's discharge to potential employers, there can be no liberty interest to which due process protections apply.

This court finds that defendants' argument ignores the realities of the job market. Although Army regulations purport to prohibit the release of information regarding character of service and reasons for discharge, a potential employer will be alerted to inquire about the reason for a discharge as soon as he or she sees a discharge certificate that reflects the discharge of a servicemember prior to the expiration of his enlistment. A person who is seeking employment and is asked to furnish background information is hardly in a position to refuse the request if he wants the job. As the *Casey* court noted, large numbers of employers ask discharged servicemembers for information and verification concerning service and discharge. *Casey v. United States*, 8 Cl.Ct. at 243. This court concludes that a stigma will clearly attach to plaintiff's name, reputation, honor, or integrity by an early discharge from active duty where such discharge is characterized as a general discharge with the reason given for discharge being "misconduct-abuse of illegal drugs." Such a stigma clearly implicates plaintiff's liberty in-

**1168**

terests to which due process protections apply.

Based on the above-stated Findings of Fact and legal precedents discussed above, the court makes the following:

## CONCLUSIONS OF LAW

(1) The failure of this court to grant injunctive relief to plaintiff would result in irreparable injury to plaintiff.

(2) The issuance of an injunction would not result in harm to defendants.

(3) There is a likelihood that plaintiff will prevail on the merits.

(4) The public interest lies in granting the requested injunctive relief.

It is hereby ORDERED that defendants and their representatives are preliminarily enjoined from discharging or separating plaintiff from active duty with the United States Army pending a disposition of this action on its merits or the granting of a meaningful hearing before the administrative elimination board pursuant to Army Regulation 635–200.