**Jon T. KARR, Plaintiff,**

**v.**

**The Honorable Michael N. CASTLE, Governor of Delaware; Brigadier General Oscar E. Trivits, the Assistant Adjutant General for Army; Colonel Anthony J. Quattro, Chief of Staff for Army; Lieutenant Colonel Norman V. Cochran, Deputy Director of Personnel for Army, ex officio and in personam, their**

**successors and assigns; Major General Arthur Episcopo, the Adjutant General of Delaware, ex officio; Major General Joseph M. Lank, in personam; the Department of Military Affairs, and the State of Delaware, Defendants,**

and

**United States of America, Intervening Defendant.**

**Civ. A. No. 88–466 MMS.**

United States District Court,
D. Delaware.

July 19, 1991.

John S. Malik, Wilmington, Del., John D. McLaughlin, Jr., Goshen, Ky., for plaintiff.

John J. Polk, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants.

William C. Carpenter, Jr., U.S. Atty., Kent A. Jordan, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., Stuart M. Gerson, Asst. Atty. Gen., Vincent M. Garvey, and Lisa A. Olson, of Justice, Civ. Div., Washington, D.C. (Jill M. Grant, Captain, U.S. Army, of counsel), for intervening defendant U.S.

MURRAY M. SCHWARTZ, Senior District Judge.

This suit was filed by plaintiff Karr against various State and Delaware Army National Guard ("DEARNG") officers (the "State defendants") asserting, among other things, violation of Karr's constitutional rights in connection with his involuntary separation from the Active Guard/Reserve ("AGR") program. On August 31, 1990, the court issued an opinion ("August 31 Opinion") resolving the parties' cross-motions for summary judgment. *United States ex rel. Karr v. Castle*, 746 F.Supp. 1231 (D.Del.1990). An order implementing the August 31 Opinion ("December 14 Order") and a related Memorandum Opinion were issued December 14, 1990. The court held in part that the separation procedures followed by certain of the State defendants pursuant to DEARNG regulations based upon National Guard Regulation ("NGR") 600–5, ¶ 6–5d were facially invalid because they failed to provide Karr with sufficient procedural due process, 746 F.Supp. at 1239–42, and ordered Karr reinstated. December 14 Order (Dkt. 69); Memorandum Opinion issued December 14, 1990 (Dkt. 68). On December 28, 1990, the State defendants filed a motion seeking reconsideration of portions of the August 31 Opinion and the December 14 Order. On December 26, 1991, the United States filed a motion to intervene as a party defendant in this case for the purpose of seeking reconsideration of that portion of the December 14 Order declaring the procedures set forth in NGR 600–5, ¶ 6–5d constitutionally inadequate.[1] Because the Local Rule 3.1.D. certificate accompanying the United States' motion to intervene indicated that plaintiff did not oppose intervention, the court granted the motion to intervene on January 3, 1991. On January 16, 1991, plaintiff, asserting that he in fact opposed the motion to intervene, filed a motion to reconsider the intervention. This Opinion addresses the plaintiff's motion for reconsideration of the United States' motion to intervene and the motions for reconsideration of the merits of portions of the August 31 Opinion and December 14 Order filed by the United States and the State defendants. The court will first address plaintiffs' motion to reconsider the intervention of the United States as a party defendant.

Although not provided explicitly by the Federal Rules of Civil Procedure, the motion for reconsideration is not uncommon in federal practice. *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983). In this District, a motion for reargument or reconsideration is made pursuant to Local Rule of Civil Procedure 3.3. The procedural mechanism afforded by Local Rule 3.3 attempts to balance the interest in finality of judicial decisions with the recognition that courts sometimes err. *Brambles U.S.A., Inc. v. Blocker*, 735 F.Supp. 1239, 1241 (D.Del. 1990). The motion ought to be granted only sparingly; however, it should be granted in circumstances where the court has patently misunderstood a party or made an error not of reasoning but of apprehension. *Id.* at 1241; *Above the Belt, Inc.*, 99 F.R.D. at 101.

In this instance, a misunderstanding clearly occurred as to whether plaintiff opposed the United States' motion to intervene. Although Local Rule 3.1 allowed plaintiff ten days to respond to the motion to intervene, the court granted the motion within that time period in reliance upon the

---

1. The United States filed a motion for reconsideration simultaneously with its motion to intervene.

Local Rule 3.1.D. certificate. While the parties disagree as to the substance of their communications concerning the motion to intervene, the fact remains that, regardless of fault, the court granted the motion on the assumption that it was unopposed and without benefit of plaintiff's position on the matter. This sort of misunderstanding is the type of situation in which the court should reconsider its prior order. Having agreed to reconsider the United States' motion to intervene, the court will deny the motion to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2) and grant permissive intervention under Rule 24(b).

■ Federal Rule of Civil Procedure 24(a)(2) permits intervention of right so long as (i) there is a timely application; (ii) the putative intervenor claims an interest relating to the transaction at issue; (iii) the putative intervenor is so situated that disposition of the action may as a practical matter impair or impede his ability to protect that interest; and (iv) the putative intervenor's interest is not adequately represented by the parties. *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 380 (D.Del.1990). The timeliness of a motion to intervene should be determined from all of the circumstances of the case. *In re Fine Paper Antitrust Lit.*, 695 F.2d 494, 500 (3d Cir.1982). Specifically, the court should consider three factors: "(1) How far the proceedings have gone when the movant seeks to intervene, (2) [the] prejudice which resultant delay might cause to other parties, and (3) the reason for the delay." *Id.* at 500 (quoting *Pennsylvania v. Rizzo*, 530 F.2d 501, 506 (3d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976)). In the case at bar, the United States did not file its motion to intervene until after the court had granted summary judgment in favor of the plaintiff. Although nominally a plaintiff throughout the litigation, the United States had previously entered a notice declining to appear. Dkt. 20. The notice requested service of all pleadings and reserved the right to intervene "for good cause shown."

■ The United States contends its motion to intervene is timely because it was unaware prior to the entry of the December 14 Order that the constitutionality of NGR 600–5, ¶ 6–5d was at issue. The United States asserts correctly that the complaint does not raise the facial invalidity of the DEARNG separation procedures or NGR 600–5; this does not mean, however, that the United States was unaware that the constitutionality of portions of NGR 600–5 was at issue prior to December 14, 1990. The August 31 Opinion specifically found the regulation constitutionally infirm. The court's files indicate that a copy of the August 31 Opinion was sent to the Assistant United States Attorney. Consequently, there was nearly four months' delay between the time the United States was put on notice that the facial validity of NGR 600–5, ¶ 6–5d was at issue and the motion to intervene. This delay, however, was not prejudicial. The United States could not move for the court to reconsider the August 31 Opinion until the order implementing the opinion issued. This did not occur until December 14. The United States' motions to intervene and for reconsideration were filed shortly thereafter. Consequently, the court finds the motion to intervene was timely.

■ The interest asserted by the United States in the litigation at bar is its interest in defending the constitutionality of NGR 600–5, a regulation promulgated by the National Guard Bureau, a joint bureau of the United States Departments of the Army and the Air Force. The United States asserts this interest will as a practical matter be impaired by prosecution of this lawsuit because of the potential *stare decisis* effect of the August 31 Opinion on future challenges to the same regulation. Plaintiff contends the asserted interest of the United States is illusory. Plaintiff correctly asserts that the court held in the August 31 Opinion that his separation was governed by regulations promulgated by DEARNG and thus governed by state law. *See* 746 F.Supp. at 1237–38. Plaintiff goes too far, however, in contending that this fact means the facial constitutionality of NGR 600–5, ¶ 6–5d itself is not at issue.

For purposes of plaintiff's separation from Active Guard/Reserve status, the regulations adopted by DEARNG are based upon and virtually indistinguishable from NGR 600–5, ¶ 6–5d. Consequently, any pronouncement by the court regarding the facial validity of the DEARNG separation procedures followed by the State defendants implicates the facial validity of the federal regulation. Further, the United States need not be bound by the August 31 Opinion to have its asserted interest impaired. Any practical impairment, including the adverse impact of *stare decisis*, may be sufficient to allow the United States to intervene. *Steinberg v. Shearson Hayden Stone, Inc.*, 598 F.Supp. 273, 280 (D.Del.1984); 7C C. Wright & A. Miller, *Federal Practice and Procedure* § 1908 at 302.

■ The United States' motion to intervene fails to satisfy the fourth requirement of Rule 24(a)(2), that is, the requirement that the putative intervenor's interest is not adequately represented by the existing parties. Plaintiff asserts that the interest of the United States is adequately represented by counsel for the State defendants. With respect to this factor, the United States asserts:

> Counsel for the State obviously could not have protected the United States' interest in defending the constitutionality of NGR 600–5 when the constitutionality of those regulations was not yet at issue in this litigation. Furthermore, counsel for the State represents the Delaware National Guard and its members who have been sued. He can neither ethically nor legally purport to represent the potentially divergent interests of the United States.

Reply Memorandum in Support of United States' Motion to Intervene and In Opposition to Plaintiff's Motion for Reconsideration at 304 (Dkt. 80). The United States' first argument is unavailing because it mischaracterizes the prior proceeding. The court did not in the August 31 Opinion *sua sponte* and out of thin air declare NGR 600–5 facially invalid. Although the facial invalidity of NGR 600–5 was not asserted in the complaint, the issue was briefed and argued by the parties in the cross-motions for summary judgment. *See* Plaintiff's Answering Brief in Opposition to Defendants' Motion for Summary Judgment at 31 (Dkt. 46); Plaintiff's Reply Brief in Support of his Motion for Partial Summary Judgment at 12–13 (Dkt. 54). As to the United States' second argument, the court fails to see how the interests of the State defendants and the United States could diverge on the facial validity of NGR 600–5. The State defendants have the same interest in defending the DEARNG regulation based upon NGR 600–5 that the United States has in defending NGR 600–5 itself. The United States' bare allegation of potentially diverging interests, without more, is unpersuasive. As a consequence, the court finds the United States has not satisfied the requirements for intervention as of right.

■ Federal Rule of Civil Procedure 24(b)(2) permits intervention upon timely application "when an applicant's claim or defense and the main action have a question of law or fact in common." As previously stated, the United States' motion to intervene is timely. In addition, the court has noted above that the United States has asserted an interest related to the main action. Moreover, Rule 24(b) also provides: "When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action." The thrust of this portion of Rule 24(b) is in the direction of liberally allowing government agencies to intervene. 7C C. Wright & A. Miller, *Federal Practice and Procedure* § 1912 at 372–74.

The court finds that the validity of a federal regulation is sufficiently at issue in this case to give the United States an interest in common with the litigation. Therefore, the court will exercise its discretion to permit the United States to intervene in this litigation pursuant to Fed.R.Civ.P.

24(b). In so holding, the court finds that intervention by the United States will not unduly delay or prejudice the adjudication of the rights of the original parties. The court now turns its attention to the motions to reconsider the December 14 Order and August 31 Opinion submitted by the State defendants and the United States.

The United States' motion seeks reconsideration of two of the holdings of the August 31 Opinion as implemented by the December 14 Order: (1) that Karr asserted a liberty interest sufficient to trigger procedural due process protections; and (2) that the procedures followed by the State defendants in separating Karr from AGR status (based upon the guidelines set out by NGR 600–5, ¶ 6–5d) failed to provide Karr with sufficient procedural due process. The motion of the State defendants seeks reconsideration of the same issues and in addition seeks reconsideration of the court's holdings that Karr adequately alleged a prima facie case against defendant Castle as commander-in-chief of DEARNG and that reinstatement is the appropriate relief in the event the court finds that Karr's rights were violated. 746 F.Supp. at 1245–46; *id.* at 1246–48.

■ Reconsideration should not be granted where it would merely accomplish repetition of arguments that were or should have been presented to the court previously. *Brambles U.S.A., Inc.,* 735 F.Supp. at 1240–41. The motion for reconsideration should not be used as a substitute for appeal or as a mechanism to present arguments inexcusably omitted in the prior proceeding. *Id.* At the same time, in ruling on a motion to reconsider, the court should keep an open mind, and should not hesitate to grant the motion if necessary to prevent manifest injustice or clear error. *Id.* Although the court's opinions should not be treated as "mere first drafts," *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.,* 123 F.R.D. 282, 288 (N.D.Ill.1988), the court should reconsider a prior decision when it appears the court has overlooked facts or precedent which, had they been considered, might reasonably have altered the result. *Weiss-*

*man v. Fruchtman,* 124 F.R.D. 559, 560 (S.D.N.Y.1989).

■ As noted above, the procedural mechanism afforded by the motion for reconsideration seeks to balance the need for finality in judicial decisionmaking with a recognition that courts sometimes make mistakes. *Brambles U.S.A., Inc.,* 735 F.Supp. at 1241. "While finality of judgments is an important consideration, the goal of finality 'must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause.'" *Federal Deposit Ins. Corp. v. Castle,* 781 F.2d 1101, 1104 (5th Cir.1986) (quoting *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401 (5th Cir.1981)).

Following the standards set out above, the court will deny the State defendants' motion for reconsideration insofar as it seeks reconsideration of the holding that the appropriate relief should be reinstatement. This issue was briefed and argued in the prior cross-motions for summary judgment and in the letter briefing prior to issuance of the December 14 Order. While the State defendants' brief in support of their motion for reconsideration might well be superior to their briefing of the issue on the original cross-motions, that alone does not justify reconsideration. *Above the Belt, Inc.,* 99 F.R.D. at 101. The State defendants have presented in their motion for reconsideration of this issue no arguments or facts which they did not have adequate opportunity to raise previously. The motion for reconsideration should not be used as a vehicle for endless debate between the parties and the court. *Brambles U.S.A., Inc.,* 735 F.Supp. at 1240. Consequently, that portion of the State defendants' motion for reconsideration addressing the type of relief appropriate in this case will be denied.

The State defendants' motion for reconsideration of the holding that plaintiff has stated a claim against defendant Castle as commander-in-chief of DEARNG will likewise be denied. In their briefing, the State defendants cite the same cases in support of the same arguments already considered

and rejected by the court in the August 31 Opinion. *Compare* 746 F.Supp. at 1245–46 *with* Defendants' Opening Brief in Support of Their Motion for Reconsideration at 21–26 (Dkt. 83). As the court previously noted, plaintiff has alleged sufficient action by Governor Castle to meet the test of actual knowledge of the alleged deprivation and acquiescence therein. *Bracey v. Grenoble,* 494 F.2d 566, 569 (3d Cir.1974). The case of *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) cited by the State defendants is distinguishable in that the allegation in *Rizzo* was failure to act in the face of statistics showing a pattern of violations, i.e. nonfeasance, rather than the affirmative malfeasance by Governor Castle alleged by plaintiff in this litigation. Further, the court notes that it appears to be common practice to name the commander-in-chief as a party defendant in a suit against the military, especially when the suit seeks injunctive relief. *See The Nation Magazine v. United States Department of Defense,* 762 F.Supp. 1558 (S.D.N.Y. April 16, 1991) (naming "George H. Bush, President of the United States and Commander–in–Chief of the Armed Forces of the United States of America" as a party defendant in a suit seeking declaratory and injunctive relief from the Defense Department's policies regarding the news media during the Persian Gulf War); *Lovell v. Heng,* 890 F.2d 63 (8th Cir.1989) (naming "Kay A. Orr, Governor of the State of Nebraska and Commander–in–Chief of the Nebraska National Guard" in a suit by a member of the Nebraska National Guard seeking reinstatement). The motion for reconsideration should not be used to engage in repetitive arguments already rejected once by the court. Consequently, the motion for reconsideration on the propriety of naming Governor Castle as a defendant in this suit will be denied.

■ Turning to the remainder of the motions for reconsideration, the court notes again that the unconstitutionality of NGR 600–5, ¶ 6–5d and the DEARNG regulations based thereon was not asserted in the complaint and was raised for the first time by plaintiff at the summary judgment stage. The prior cross-motions for summary judgment in this case involved numerous complex issues, with neither party focusing upon the facial validity of the separation. While the issue was addressed and argued, it was obscured by the many other issues in the case. Although the court's August 31 Opinion and December 14 Order did not decide an issue outside the adversarial issues presented for decision, a review of the prior briefing reveals that the court decided the issue without benefit of counsel's focused energies in the briefing stage and at oral argument. As a consequence, the court is persuaded that it may have overlooked facts or precedent which, if considered, might have changed the outcome of the August 31 Opinion and December 14 Order regarding the constitutionality of NGR 600–5 and the DEARNG separation regulations.

Ordinarily, the court would not grant reconsideration merely because an issue properly before it was lost in the shuffle by counsel. The court recognizes, however, the consequences of its prior ruling with respect to NGR 600–5 and the potential widespread effect of that ruling upon the National Guard of the several states and the AGR program. The court also recognizes that its prior decision was rendered without benefit of the views of the United States. Under the circumstances of this case, the court finds that the importance of achieving substantial justice outweighs the value of finality. As a consequence, the court will exercise its discretion and grant the motions for reconsideration of its holding that NGR 600–5, ¶ 6–5d and the DEARNG regulation based thereon are facially invalid. The court now turns to the substantive issues raised by the motions for reconsideration with benefit of focused briefing by the United States, the State defendants, and plaintiff Karr.

The court begins with a review of its holding in the August 31 Opinion. This action stems from the involuntary separation of Jon T. Karr, formerly a Captain in DEARNG, from a three-year tour in the Active Guard/Reserve as Recruiting and Induction Officer. On the recommendations of two of his superior officers, Lieu-

tenant Colonel Norman V. Cochran and Brigadier General Oscar E. Trivits, Karr was involuntarily separated from his three-year AGR tour. Both Cochran and Trivits characterized in writing certain actions taken by Karr as constituting dereliction of duty and substandard performance.[2] Essentially, Karr complains that the actions taken by him which formed the factual bases for his involuntary separation from the AGR tour did not constitute dereliction of duty or substandard performance which would warrant involuntary separation. Rather, he argues that his DEARNG superiors falsely mischaracterized his actions because he had incurred their displeasure. Karr asserts that the separation has prevented him from procuring other employment commensurate with his education and prior experience.

In his complaint and on his motion for summary judgment, Karr alleged a number of constitutional and statutory violations which were discussed in the August 31 Opinion and are not relevant to the motions at bar. The motions for reconsideration presently before the court focus upon Karr's allegation that the separation procedures followed by the State defendants denied him procedural due process under the provisions of the Fourteenth Amendment and 42 U.S.C.A. §§ 1983, 1985, and 1986. Specifically, Karr asserted that the DEARNG separation procedures, which are adopted from and virtually indistinguishable from the guidelines promulgated by the Chief of the National Guard Bureau at NGR 600–5,[3] were facially invalid because they failed to provide him with a pretermination hearing and adequate opportunity for appeal.

In the August 31 Opinion, the court found that Karr had asserted a liberty interest sufficient to trigger procedural due process protections in accordance with *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Applying the standard set forth by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the court concluded that procedural due process required a pretermination hearing in this case. Because the DEARNG separation regulations based upon NGR 600–5, ¶ 6–5d did not provide for a pretermination hearing when the National Guard member contests the basis for his involuntary separation, the court declared the regulations facially invalid.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408

**2.** The facts surrounding Karr's involuntary separation are set forth fully in the August 31 Opinion at 746 F.Supp. at 1234–36.

**3.** The relevant separation procedures set forth in NGR 600–5 are as follows:

6–5 Separation for cause and procedures

\*   \*   \*   \*   \*   \*

d. Procedures.

(1) A commander at any echelon may submit a recommendation to involuntarily separate an AGR member, who is assigned within that organization, from the AGR program through channels to the State Adjutant General for a final determination. The following procedures will be followed for separation under this paragraph.

(a) The unit commander will refer the recommendation to the AGR member concerned for rebuttal or comment prior to forwarding through command channels.

(b) Specific reasons for the release must be presented in writing to the AGR member. Comments offered by AGR member will be included with the initiating commander's recommendations. The member may be given the opportunity to but will never be required to submit a written request for voluntary release from AGR program in lieu of involuntary separation.

(c) ARNG intermediate commanders will recommend approval/disapproval, indicating the reason(s), and forward to next higher headquarters with the least practicable delay. If additional reasons for separation are included in the initiating commander's recommendation, the AGR member will be given the opportunity to rebut those additional reasons.

(d) Where practicable, as determined by the State Adjutant General or the SPMO, AGR personnel pending involuntary separation under this paragraph will, if they request, be provided assistance by a JAGC officer in preparing their rebuttals.

(e) AGR member will not be released from full-time National Guard duty until the State Adjutant General has approved final involuntary separation action.

U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In the August 31 Opinion, the court held that Karr did not have a property interest in completing his AGR tour. 746 F.Supp. at 1239–1240. The court did find, however that Karr successfully asserted a liberty interest insofar as his separation was carried out in such a manner as to stigmatize him. *Id.* at 1240–41.

In determining whether a plaintiff has asserted a protected interest, the court must look to the nature of the interest and not merely to its importance to the individual. *Roth,* 408 U.S. at 571, 92 S.Ct. at 2706. In order for Karr's separation from government employment to implicate a liberty interest, Karr must establish that the basis for his separation was false and stigmatizing and would be publicized by DEARNG so as to impugn his character and reputation.[4] *See, e.g., Derstein v. State of Kansas,* 915 F.2d 1410, 1414 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991); *Doe v. Garrett,* 903 F.2d 1455, 1462 (11th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991); *Evans v. City of Dallas,* 861 F.2d 846, 851 (5th Cir. 1988); *see also Perri v. Aytch,* 724 F.2d 362, 367 (3d Cir.1983) ("[Plaintiff] alleges that the false accusation made in connection with her termination impugns her good character and reputation, is part of her personnel file, and can reasonably be expected to be communicated to prospective employers and prevent her from obtaining alternative employment. If true, these conditions would require the employer to provide procedural safeguards.").

An important element for the assertion of a reputational injury by a former government employee is that the govern-ment's asserted basis for the separation be factually disputed. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam); *Doe v. Garrett,* 903 F.2d at 1463. In this case, Karr challenges the basis for his separation. Karr's superiors assert as the basis for his discharge "dereliction of duty" and "substandard performance." *See* Memorandum in Support of United States' Motion for Reconsideration Exhs. 7, 9, 11 & 12 (Dkt. 79). Karr contends the characterization of his actions as dereliction of duty and substandard performance is false and that he was separated in retaliation for angering his superior officers by conscientiously performing his duties.

In addition to falsity the reasons asserted for the separation must be sufficiently stigmatizing to trigger procedural due process protections. The type and degree of stigma sufficient to implicate a liberty interest has been described variously by the courts. In the seminal case *Board of Regents v. Roth,* the United States Supreme Court indicated that a reputational liberty interest could be infringed by a government employer in two ways: (i) if the charge against the individual might seriously damage his standing and associations in his community by impugning his good name, reputation, honor, or integrity; or (ii) if the charge imposed such a stigma as to foreclose the individual's freedom to take advantage of other employment opportunities. 408 U.S. at 573, 92 S.Ct. at 2707; *see also Sims v. Fox,* 505 F.2d 857, 863 (5th Cir.1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975) ("In brief, *Roth* teaches that the government's attack on one's reputation may infringe constitutionally protected liberty in two respects: (1) governmental degradation of one's

---

**4.** This standard was not changed by the United States' Supreme Court's recent decision in *Seigert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The plaintiff in *Seigert* filed suit against his former supervisor at a Federal Government hospital facility in Washington, D.C. The former government employer had written an unflattering response to requests for information regarding Seigert's job performance. The Supreme Court held that Seigert had failed to assert a protected liberty interest and that his claim was not a constitutional claim but rather a simple tort claim for defamation. The Court was careful, however, to note that Seigert had voluntarily resigned his former government employment and to distinguish the facts in *Seigert* from the situation in which a former government employee asserts violation of a constitutionally protected liberty interest in the context of discharge from government employment. *Id.* at 1794. Consequently, the reasoning and holding in *Seigert* are not relevant to Karr's claim that his separation from his AGR tour implicated a protected liberty interest.

standing in his community may be a denial of 'liberty'; (2) governmental communication of derogatory information to employers may be an attack on 'liberty.'"). In another, earlier case, the Supreme Court held that in order to infringe a liberty interest the government must impose a badge of disloyalty or infamy upon the individual along with attendant foreclosure of other employment opportunities. *Cafeteria and Restaurant Workers Union, Local 473, AFL–CIO v. McElroy,* 367 U.S. 886, 898, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230 (1961); *see also Evans v. City of Dallas,* 861 F.2d at 851 (same); *Perri v. Aytch,* 724 F.2d at 367 (stigma must prevent individual from obtaining alternative employment).

Both the United States and the State defendants cite *Scarnati v. Washington,* 599 F.Supp. 1554 (M.D.Pa.), *aff'd without op.,* 772 F.2d 896 (3d Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986), for the proposition that the reputational injury must occur outside the employment context:

> In the context of *Roth*–type cases, a charge which infringes one's liberty can be characterized as an accusation or label given the individual by his employer which belittles his worth and dignity as an individual and, as a consequence is likely to have severe repercussions outside of professional life....

*Id.* at 1556. The defendants fail to note, however, that the court in *Scarnati* quoted this statement from a Ninth Circuit Court of Appeals case, *Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 366 (9th Cir.1976). More importantly, defendants fail to note that the *Scarnati* court also quoted with approval the following passage from the *Stretten* case:

> But a label which would prevent an individual from practicing his chosen profession at all may have consequences so severe that liberty would be infringed.

*Scarnati,* 599 F.Supp. at 1556 (quoting *Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 366 n. 13 (9th Cir.1976)).

■ The bulk of the case law indicates that a government employer infringes an individual's liberty interest when the employer so stigmatizes the individual as to impair that individual's ability to obtain alternative employment. Karr asserts that his separation for dereliction of duty and substandard performance is sufficiently derogatory to implicate a liberty interest.

■ As a matter of law, the mere fact that Karr was involuntarily separated and the inferences which arise therefrom are insufficient to implicate a liberty interest. *Martin v. Unified School Dist. No. 434, Osage County, Kansas,* 728 F.2d 453, 456 (10th Cir.1984). Similarly, a separation based solely upon substandard performance, while it may make Karr less attractive to prospective employers, is not sufficiently derogatory to implicate a liberty interest. *Harrison v. Bowen,* 815 F.2d 1505, 1518 (D.C.Cir.1987) (dismissal for "unsatisfactory job performance ... does not carry with it the sort of opprobrium sufficient to constitute deprivation of liberty"); *Mazaleski v. Treusdell,* 562 F.2d 701, 713–14 (D.C.Cir.1977).

■ Involuntary separation based upon dereliction of duty may be sufficiently derogatory to substantially impair Karr's ability to obtain future employment and thus implicate a liberty interest. The memoranda prepared by both Cochran and Trivits recommended that Karr be involuntarily separated based in part upon dereliction of duty. Memorandum in Support of United States' Motion for Reconsideration Exh. 7 at 1 (Dkt. 179); *id.* Exh. 9 at 2. The notice of involuntary separation received by Karr from Major General Lank indicated that Karr was being separated for the reasons outlined in the Cochran memorandum. *Id.* Exh. 11; *see also* NGR 600–5 ¶ 6–5(c)(2) (professional dereliction is grounds for involuntary separation). Dereliction of duty is a crime chargeable under the Uniform Code of Military Justice. 20 Del.C. § 151; 10 U.S.C.A. § 892(3). The charge that Karr was derelict in his duties may therefore be a badge of infamy sufficient to trigger a liberty interest and impair his ability to obtain alternative employment.

■ The allegedly false charge of dereliction of duty does not implicate Karr's constitutionally protected liberty interest, however, unless it so stigmatizes him that he is foreclosed from obtaining alternative employment to a degree which goes beyond merely disadvantaging him in the job market. *Mazaleski*, 562 F.2d at 713. For example, no liberty interest is implicated if separation from government employment forecloses an individual from working at one isolated and specific military installation. *See Cafeteria and Restaurant Workers Union*, 367 U.S. at 896, 81 S.Ct. at 1749. Clearly, dismissal from a specific position or foreclosure from engaging in one particular form of government employment is not a deprivation of a liberty interest. *See* 2 R. Rotunda, J. Nowak & J. Young, *Treatise on Constitutional Law* § 17.4 at 228 (1986). As the range of employment or professional opportunities foreclosed increases, however, it becomes more likely that a liberty interest will be implicated. For example, " '[t]o be deprived not only of present government employment but of future opportunity for it is certainly no small injury....' " *Roth*, 408 U.S. at 574, 92 S.Ct. at 2707 (quoting *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 185, 71 S.Ct. 624, 655, 95 L.Ed. 817 (1951) (Jackson, J., concurring)); 2 R. Rotunda, J. Nowak & J. Young, *supra*, § 17.4 at 228 ("However, if in dismissing the employee, the government also forecloses the individual's possible employment in a wide range of activities in both the public and private sectors, this dismissal will constitute a deprivation of liberty sufficient to require that the individual be granted a fair hearing."). Consequently, whether a liberty interest is implicated depends in part upon the definition of the scope of employment opportunities from which the individual is foreclosed. *Scarnati*, 599 F.Supp. at 1556 (quoting *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 366 n. 13 (9th Cir.1976)) ("[I]n some cases due process rights will turn on a definition of the scope of a particular profession.").

In this case, Karr alleges two kinds of foreclosure from future employment. First, he alleges that his separation has foreclosed him from pursuing his chosen "profession" as a full-time active duty member of the National Guard or as a full-time active duty member of any of the armed services. Second, Karr contends that the stigma arising from his separation has precluded him from finding work commensurate with his pre-AGR education and experience as a professor of sociology and criminal justice.

■ The parties do not cite, nor has the court's own research revealed, any cases which define the scope of "profession" for purposes of asserting a liberty interest under the Due Process Clause. In other contexts, whether an occupation is a "profession" depends upon such characteristics as the type or amount of necessary education, training or experience. *See generally* 20 C.F.R. §§ 541.3 *et seq.* (regulations defining whether an individual is employed in a "professional capacity" for purposes of the minimum wage and maximum hours exemption under the Fair Labor Standards Act); 77 A.L.R.Fed. 682 (same); 18 A.L.R. 287 (discussing preference visas for professionals under the Immigration and Naturalization Act of 1952).

It is unclear from the briefing whether the injury Karr asserts is that the involuntary separation has prevented him from pursuing a "profession" as an officer in the AGR or that he is precluded from pursuing future service as an officer on active duty in the full-time regular Army. The court notes initially that it is the fact of involuntary separation and not the particularized charge of dereliction of duty which prevents Karr from engaging in future full-time active duty military service. As stated above, the mere fact of discharge is ordinarily insufficient to implicate a liberty interest. Moreover, if Karr merely intends to assert that the separation precludes him from further AGR service, this foreclosure is more akin to preventing Karr from occupying a particular position rather than from pursuing a particular profession.

If Karr's complaint is that he is foreclosed from pursuing full-time active duty service in the regular Army, the court notes

as a preliminary matter that there is no evidence in the summary judgment record that Karr has ever served in the regular Army. At the very least, therefore, there is a question of fact as to whether service in the regular Army is Karr's chosen "career." Further, unlike law or medicine, military service does not require particularized education, experience, or professional license. Karr is not in the same position as a lawyer, who, after obtaining particularized education and professional license is foreclosed from utilizing the same by disbarment. The fact that his involuntary separation prevents Karr from serving in the future as an active duty soldier does not in and of itself prevent him from pursuing other government employment or employment suited to his particularized educational background in sociology.

While an authoritative article discussing the AGR status speaks in terms of the "career Reservist," England, *The Active Guard/Reserve Program: A New Military Personnel Status,* 106 Mil.L.Rev. 1 (1984), and while it is not uncommon to speak of the "career" or "professional" soldier, there is no constitutionally protected interest in the ability to pursue a full-time active duty military career. As the court stated in the August 31 Opinion, Karr's orders contemplated a three-year tour of duty "unless sooner released or extended by proper authority." 746 F.Supp. at 1240. As has been noted by other courts, military officers generally serve at the pleasure of the President and may be terminated with or without cause. *Pauls v. Secretary of the Air Force,* 457 F.2d 294, 297 (1st Cir.1972). The court found in its August 31 Opinion that individual servicemen have no property interest in continued military service. Likewise, individuals have no constitutionally protected liberty interest in continued military service. *See Burns v. United States,* 9 Cl.Ct. 273, 279 (1985). Karr's assertion that he is foreclosed from pursuing in the future full-time active duty military service does not implicate a constitutionally protected liberty interest.

On the other hand, Karr's allegation that his involuntary separation for dereliction of duty has prevented him from obtaining civilian work commensurate with his education and experience as a former university professor of sociology and criminal law is sufficient to implicate a liberty interest. Karr's unsupported allegation alone, however, does not entitle him to summary judgment. Karr must show that there is no issue of material fact that the involuntary separation severely limited his employment opportunities. Defendants' motion for summary judgment must be granted if there is no evidence in the summary judgment record that the allegedly false charge of dereliction of duty has foreclosed Karr from a wide range of employment opportunities. This consideration implicates the final factor in determining if a reputational liberty interest has been asserted, that is, whether the allegedly false and derogatory basis for the discharge has been publicized to potential employers so as to stigmatize the discharged individual.

In the August 31 Opinion, the court opined that the derogatory basis for Karr's discharge was sufficiently publicized because potential employers are aware of the meaning and significance of military separation codes. 746 F.Supp. at 1240–41. The United States has submitted the "Declaration" of John N. Slone, who is Personnel Policy Integrator for the Department of the Army ("Slone Declaration"). Dkt. 82. The Slone Declaration explains that Army regulations require that the copy ("Copy 1") of the certificate of release or discharge from active duty ("DD Form 214") sent to the discharged serviceman is intended to be the only discharge paper provided to future employers. Copy 1 contains no reason for separation from military duty.[5] In re-

---

5. Eight copies of DD Form 214 are prepared. Copy 1, discussed above, is given the serviceman with the intent that it be provided to future employers. Copy 1 does not contain a reason for separation. The remaining copies do state the reason for separation. Pursuant to Army regulations, however, these will not be seen by potential employers. Copies 2 and 7 are kept in the serviceman's Military Personnel Records Jacket ("MPRJ") and are not disclosable without the serviceman's written consent. Copies 3 and 6 are disclosed only to officials who administer

sponse, Karr asserts (i) that the copy of DD Form 214 which he received was not Copy 1 but Copy 3, which set forth the reason for separation; and (ii) that in any event, because Karr was not separated from the military entirely and retains a commission in the United States Army Reserve, he is required to be truthful and forthright in explaining to potential employers the reasons for his separation from the AGR.

Although Karr received Copy 3 instead of Copy 1, Copy 3 indicates only that Karr's discharge was honorable and that the narrative reason for his separation was "Involuntary Separation—Substandard performance." Appendix to Plaintiff's Opening and Answering Briefs on Cross–Motions for Summary Judgment at A–2 (Dkt. 47A).[6] As stated previously, separation for substandard performance does not sufficiently impugn Karr's character so as to implicate a liberty interest.

Karr nowhere asserts that defendants disseminated the Cochran and Trivits memoranda or otherwise publicized that his involuntary separation was based in part upon dereliction of duty. Instead, Karr asserts that his continued status as an officer in the United States Army Reserve requires him to be truthful and forthright and this in turn requires him to inform potential employers that he was involuntarily separated due to dereliction of duty. The courts are divided on the issue of whether a liberty interest is implicated when the individual himself publicizes the circumstances of his separation. *Compare*

*Derstein v. State of Kansas,* 915 F.2d 1410, 1414 (10th Cir.1990) (no liberty interest implicated where individual is source of publication of derogatory allegations against him) *with Guerra v. Scruggs,* 747 F.Supp. 1160, 1167 (E.D.N.C.1990) (liberty interest implicated because potential employers will require an explanation of why individual left previous employment, making publication by individual at least in part involuntary); *May v. Gray,* 708 F.Supp. 716, 722 (E.D.N.C.1988) (same).

Karr states that "he actually was required to enclose his DD Form 214 with an employment application in only one instance; in all other cases he was simply required to state why he left his former employment." Plaintiff's Answering Brief in Opposition to Defendant's Motion for Reconsideration at 13 (Dkt. 85). Plaintiff does not contest the factual basis for separation. That is, Karr agrees that he actually did the things the Cochran and Trivits memoranda accused him of doing. Instead, Karr disputes defendants' characterization of his actions as dereliction of duty sufficient to warrant involuntary separation.[7] The reason for Karr's separation as set forth in his discharge papers was substandard performance. The details underlying Karr's performance are not disputed, and consequently, the fact that Karr may be forced to recount to a potential employer his differences with his superiors does not falsely impugn his character or portray him in an falsely negative light. The court fails to see how Karr's obligation to be

---

veteran's eligibility programs, and Copy 5 is disclosed only to the Department of Labor for the purpose of determining the individual's eligibility for unemployment compensation. These agencies cannot further disclose the forms without the individual's consent. Copy 8 is maintained for six months in the Separation Transfer Activity File and is then destroyed. Its disclosure is prohibited by the Privacy Act, 5 U.S.C.A. § 552a(b). Copy 4 is maintained in the MPRJ and is provided to the serviceman for his information only upon request. Dkt. 82.

6. The court also notes that there is no evidence that Karr ever attempted to obtain Copy 1, which contained no information regarding the reasons for his separation and to which he was entitled.

7. There is some question as to whether Trivits' recommendation that Karr be separated involved incidents different from those recounted in the Cochran memorandum. *See* 746 F.Supp. at 1235. Regardless, Karr does not dispute that the incidents upon which Trivits' recommendation was based occurred. Like the incidents set out in the Cochran memorandum, Karr disputes that these incidents amounted to dereliction of duty or substandard performance. Consequently, while Trivits' recommendation that Karr be involuntarily separated may have been based upon different facts, the argument in terms of the procedural due process afforded Karr remains the same.

forthright could require him to disclose something other than the reason for separation stated on the DD Form 214, which is substandard performance. If in explaining the circumstances of his separation Karr chooses to inform a potential employer that his superiors also characterized his behavior as dereliction of duty, the potential employer's knowledge of this characterization should not be imputed to the State defendants. In sum, even if the State defendants falsely characterized Karr's actions as dereliction of duty, this characterization has not been publicized by them so as to implicate Karr's reputational liberty interest.

Upon reconsideration, the court holds that plaintiff Karr has failed to assert a liberty interest sufficient to implicate the requirements of procedural due process. Because the court upon reconsideration finds that no liberty interest has been asserted, it will not reach the question of whether the process afforded Karr was adequate. The court will withdraw the relevant portions of the August 31 Opinion and the December 14 Order. Defendants' motion for summary judgment on the procedural due process claim will be granted. Although the Memorandum Opinion issued December 14, 1990 concerns the mechanics and propriety of reinstatement, an issue the court declined to reconsider in this Opinion, it was issued in conjunction with the December 14 Order to facilitate plaintiff's reinstatement after the court granted plaintiff's motion for summary judgment on the procedural due process claims. In light of the court's disposition of the procedural due process claim, the December 14, 1990 Memorandum Opinion is no longer operative; it may, however, prove relevant in the event the plaintiff prevails on his remaining claims. The court, therefore, will withdraw the December 14, 1990 Memorandum Opinion pending final resolution of all of plaintiff's claims. An appropriate order will issue.