Frank **SEIDMAN** and Kathleen Seidman, **individually and on behalf of all those similarly situated, Plaintiffs,**

v.

**AMERICAN MOBILE SYSTEMS, et al., Defendants.**

**Civil Action No. 92–1782.**

United States District Court, E.D. Pennsylvania.

March 7, 1997.

Order Correcting Decision and Denying Reconsideration April 3, 1997.

Lindsey B. Slaughter, Kohn, Savett, Klein & Graf, P.C., David H. Weinstein, Robert S. Kitchenoff, Paul J. Scarlato, Weinstein, Kitchenoff, Scarlato & Goldman, Ltd., Philadelphia, PA, Scott H. Mustin, Krekstein, Wolfson, Mustin 7, White, LLC, Philadelphia, PA, for plaintiffs.

Rona J. Rosen, Klehr, Harrison, Harvey, Branzburg & Ellers, Michael N. Feder, David L. Braverman, Fellheimer Eichen & Braverman, P.C., Philadelphia, PA, for American Mobile Systems, Inc.

Walter M. Einhorn, Jr., Geoffrey A. Kahn, Alan J. Davis, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for Deloitte & Touche.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiffs in this securities class action have moved the Court for a final judgment and order under Rule 54(b) of the Federal Rules of Civil Procedure, final approval of two settlements with a total value of $1,125,-000, $375,000 in attorneys' fees representing 33.3% of the common fund, $204,316.26 in out-of-pocket expenses, and $5000 in a class representative fee. For the reasons that follow, the Court will grant entry of a final judgment under Rule 54(b), will approve the two settlements, will award plaintiffs' counsel

attorneys' fees in the amount of $281,250 representing 25% of the common fund, and $184,730.73 in out-of-pocket expenses, and will award class representative Frank Seidman $1280 as reimbursement for the reasonable value of the time he spent on matters relating to this litigation.

## I. BACKGROUND

This securities litigation involves a consolidated class action brought in federal district court in the Eastern District of Pennsylvania. On March 26, 1992, plaintiffs Frank and Kathleen Seidman ("plaintiffs") filed a complaint, on behalf of themselves and all other persons who purchased common shares of defendant American Mobile Systems, Inc. ("AMS") between July 1, 1990, and March 24, 1992, ("the class period"). Named as defendants in the complaint were AMS and William J. Young, who had served as the Director, President, Chief Executive Officer ("CEO"), and Chief Financial Officer ("CFO") of AMS during the class period.

Plaintiffs' complaint against AMS alleged violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, the rules and regulations of the Securities and Exchange Commission ("SEC") promulgated thereunder, and the common law of negligent misrepresentation. Specifically, plaintiffs alleged that during the class period, Young, in his capacity as President and CEO of AMS, directed the unauthorized transfer of $4.1 million from the accounts of AMS to other entities controlled by Young, and that AMS failed to disclose in publicly disseminated materials and public statements material facts concerning Young's unauthorized transfer of AMS funds and the resultant impact upon AMS's financial condition. Plaintiffs claimed that, as a result of the misrepresentations and omissions of material facts by AMS, they were induced to purchase AMS stock at artificially inflated prices. Therefore, plaintiffs alleged, they suffered substantial financial losses resulting from purchases of AMS stock during the class period.

On August 7, 1992, AMS moved to dismiss the complaint. The Court denied the motion. On August 28, 1992, the clerk entered a default against Young for failure to appear, plead, or otherwise defend himself in this case.

On March 24, 1993, plaintiffs filed a class action complaint, on behalf of themselves and all other individuals who purchased shares of AMS common stock during the class period, against defendant Deloitte and Touche ("D & T"), the accounting firm which audited AMS's financial condition during this period. Plaintiffs' complaint against D & T alleged violations of Sections 10(b) and 20(a) of the Securities and Exchange Act and the rules and regulations of the SEC promulgated thereunder. Plaintiffs alleged that D & T knowingly and recklessly failed to disclose adverse material facts about the financial condition of AMS in reports filed with the SEC and in other documents disseminated to members of the investing public during the class period. Plaintiffs further alleged that D & T knew or was reckless in not knowing that Young was engaged in a scheme of unauthorized transfers of funds into and out of AMS's accounts. Therefore, plaintiffs claimed, they suffered substantial financial losses from D & T's failure to disclose material information regarding AMS stock which caused in part AMS stock to be traded at artificially inflated prices during the class period.

On May 28, 1993, D & T moved to dismiss the complaint. The Court denied the motion.

On July 26, 1993, following a hearing, the Court ordered both cases consolidated. On August 5, 1993, plaintiffs filed a consolidated complaint which named as defendants AMS, D & T, and Young. Plaintiffs' consolidated complaint tracked the allegations made in the earlier complaints. Both AMS and D & T filed answers to the complaint and asserted affirmative defenses thereto.

On August 5, 1993, plaintiffs filed a motion for class certification in the consolidated action. On September 30, 1994, after a hearing, the Court conditionally certified the following class:

all persons who purchased or acquired the common stock of defendant American Mobile Systems, Inc. during the period from July 1, 1990 until March 2, 1992, and who sustained damages as a result of such pur-

chases. American Mobile Systems, Inc., Deloitte & Touche, all Deloitte & Touche partners, all present and former officers and directors of American Mobile Systems, Inc., all members of the immediate families of the foregoing individuals, and any entity affiliated with or controlled by the foregoing individuals or the defendants shall be excluded from the class.

On May 19, 1994, D & T moved for partial summary judgment on the issues of secondary liability. The Court granted the motion on March 14, 1995.

In May 1996, plaintiffs agreed to a settlement with D & T. The D & T settlement provided for payment to the class of $350,000 in cash.

On August 12, 1996, on the eve of trial submissions, plaintiffs agreed to a settlement with AMS. The AMS settlement provided for the following payments to the class: (1) $200,000 in cash; (2) $225,000 in either cash or common stock of Nextel Communications, Inc. ("Nextel")[1] valued as of the date the AMS settlement; and (3) 18–month warrants to purchase shares of Nextel common stock valued by the parties at $350,000 as of August 1, 1996.

After deductions of the expenses of notice and settlement administration, attorneys' fees and costs, and a class representative fee, both settlement funds will be distributed to those class members submitting valid claims.

In accordance with the Plan of Distribution described in the settlements mailed to the class, both settlement funds will be allocated pro-rata among class members. The amount each class member shall receive will be determined under a formula which factors the varying levels of damages suffered by class members during different times during the class period ("the Recognized Loss").

On October 22, 1996, the Court held a hearing on plaintiffs' request for conditional approval of the settlements, award of attorneys' fees and reimbursement for litigation expenses, and award of a class representative fee. Upon entertaining arguments from counsel on the issues, the Court granted preliminary approval to the settlements and the requested fees. Thereafter, approximately 2,000 notices were mailed by AMS and D & T to class members. Subsequently, pursuant to the Court's order, summary notices for both settlements were published in the national edition of the *Wall Street Journal.* No objections were filed by class members to the D & T settlement and none opted out of the class.

On January 3, 1997, the Court conducted a final hearing regarding entry of a final judgment and order under Rule 54(b) of the Federal Rules of Civil Procedure, approval of the settlements, award of attorneys' fees and reimbursement for litigation expenses, and award of a class representative fee. No objectors appeared at the hearing.

Since the date of the final hearing, the Court has requested and the parties have furnished the Court with additional submissions regarding counsel's request for reimbursement of expenses and payment of a fee to the class representative. The Court now sets forth its conclusions.

## II. DISCUSSION

### 1. Certification of Final Judgment

Plaintiffs seek certification of a final judgment and order under Fed.R.Civ.P. 54(b)[2] in connection with the settlements. Both plaintiffs and the defendants emphasize the need for finality and complain that in the absence of a certification of a final judgment under Rule 54(b), the distribution of the settlement fund will have to await the ordinary appellate process.

Rule 54(b) is designed to "facilitate the entry of judgment on one or more claims,

---

1. Nextel is the parent corporation of AMS.

2. Fed.R.Civ.P. 54(b) provides in relevant part:
 **(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for entry of a judgment.

as to one or more parties, in a multi-claim/multi-party action." *Allis–Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 363 (3d Cir.1975). The "rule attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Id.* "Ordinarily an application for a [Rule] 54(b) order requires the [district court] judge to exercise considered discretion, weighing the overall policy against piecemeal appeals against whatever exigencies the case may present." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 441 (3d Cir.1977) (quoting *Panichella v. Pennsylvania RR.*, 252 F.2d 452, 455 (3d Cir.1958)). Certification of a final judgment under Rule 54(b) is generally disfavored "[and] should not be entered routinely or as a courtesy or accommodation to counsel." "The power which this Rule confers upon the trial judge should be used only in the 'infrequent and harsh case' as an instrument for the improved administration of justice." *Allis–Chalmers*, 521 F.2d at 366.[3]

■ The Court finds that this is one of the "infrequent and harsh" cases where Rule 54(b) certification applies and therefore will grant plaintiffs' request for entry of a final judgment and order. Having been advised by plaintiffs that in the future they may seek to collect damages from the yet-to-be found third defendant in this case, William C. Young, the Court concludes that there is no just reason for the delay of having the distribution of the settlement fund await the ordinary appellate process while plaintiffs continue with their efforts to locate Young and prosecute their case against him. Therefore, the Court is satisfied that plaintiffs' specific and concrete contention of prospective harm warrants Rule 54(b) treatment.

2. Approval of the Settlements

A. The AMS Settlement

■ The parties seek final court approval of the AMS settlement for $775,000. The AMS settlement is comprised of the following amounts: (1) $200,000 in cash; (2) $225,000 in cash or payable in shares of Nextel common stock[4]; and (3) 18–month warrants for Nextel common stock valued by the parties at $350,000 as of August 1, 1996.[5] The class now has been afforded notice of the settlement's proposed terms and an opportunity to comment on them. Prior to granting a request for final approval of the settlement, the Court must find it to be "fair, adequate, and reasonable." *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 965 (3d Cir.1983). Significant weight should be attributed "to the belief of experienced counsel that settle-

---

3. In exercising discretion under Rule 54(b), the Third Circuit has instructed district courts to consider the following factors: (1) the relationship between the adjudicated and non-adjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of the trial, frivolity of competing claims, expense and the like. *See Allis–Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d at 363. The Third Circuit has explained that "depending upon the facts of the particular case, all or some of the above factors may bear upon the trial court's discretion in certifying a judgment as final under Rule 54(b)." *Id.* In this case, the Court finds that under the circumstances of this case, while the first four factors are not relevant, the fifth factor, e.g., delay, weighs especially in favor of entry of a Rule 54(b) final judgment and order.

4. A number of federal courts and the leading commentator on class action matters have explained that common stock is an appropriate form of consideration in class action settlements. *See e.g., In re U.S. Bioscience Securities Litigation*, 155 F.R.D. 116, 117 (E.D.Pa.1994); *Galdi Securities Corporation v. Propp*, 87 F.R.D. 6, 10 (S.D.N.Y.1979); *Herbst v. International Tel. Corp.*, 72 F.R.D. 85, 88 (D.Conn.1976); *Oppenlander v. Standard Oil*, 64 F.R.D. 597, 604 (D.Colo.1974); *Marcus v. Putnam*, 60 FRD 441, 446 (D.Mass.1973); *Newberg on Class Actions*, § 11.46 at 11–109 (3d ed.1992) (citing cases).

5. A number of federal courts and the leading commentator on class action settlements have explained that warrants are an appropriate form of consideration in class action settlements. *See e.g., In re United States Bioscience Securities Litigation*, 155 F.R.D. 116, 117 (E.D.Pa.1994); *In re Ames Department Stores, Inc., Debenture Litigation*, 835 F.Supp. 147, 149 (S.D.N.Y.1993); *Newberg on Class Actions*, § 11.46 at 11–109 (3d Ed.1992) (citing cases).

ment is in the best interest of the class." *Austin v. Pennsylvania Dep't. of Corrections,* 876 F.Supp. 1437, 1472 (E.D.Pa.1995). However, due to the risk that a collusive settlement agreement may be reached that fails to satisfy the class, a reviewing court must ascertain that the settlement was the product of "good faith, arms length negotiations" before granting its approval. *Lake v. Nationwide Bank,* 900 F.Supp. 726, 731, 732 (E.D.Pa.1995). *See also, Newberg on Class Actions,* Vol. 2, § 11.41 at 11–88 (3d ed. 1992).

█ "In order for the determination that the settlement is fair, reasonable, and adequate 'to survive appellate review, the district court must show it has explored comprehensively all relevant factors." *In re General Motors Corp. Pick–Up Truck Fuel Tank,* 55 F.3d 768, 805, (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995) (citing *Malchman v. Davis,* 706 F.2d 426, 434 (2d Cir.1983). In conducting this analysis, the Third Circuit has instructed district courts to inform their decisions by the factors outlined in the leading case of *Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975):

(1) the complexity, expense, and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class through the trial;

(7) the ability of the defendants to withstand a greater settlement;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery;

(9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 157.

█ A number of factors weigh in favor of approving the settlement. The first *Girsh* factor reflects "the probable costs, in both time and money, of continued litigation." *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 801 (3d Cir.), *cert. denied,* 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974). Unquestionably, trial of this securities fraud class action would be complex and expensive.

Second, out of the approximately 2,000 plaintiffs comprising the class, there have not been any objections to the settlement. The Court is wary of placing too much emphasis on this lack of opposition since members of the class with low individual stakes in the outcome often do not file objections. Nonetheless, the lack of any objections or requests for exclusion combined with the fact that at least some members of the class are sophisticated institutional investors, bolsters the conclusion that the settlement is not unreasonable.

Third, the "stage of the proceedings" factor captures the degree of case development that class counsel have accomplished prior to settlement. *General Motors,* 55 F.3d at 785. The Court is persuaded that the opinions of counsel on the issue of settlement were well informed. Plaintiffs' counsel conducted extensive discovery over a four-and-one-half year period and sought expert opinions prior to reaching an agreement with AMS.

█ Fourth, proving liability and damages in securities fraud cases is almost always a daunting task for plaintiffs. To succeed on their claims against AMS under Rule 10b–5, plaintiffs had the burden of establishing that AMS's omissions or misstatements regarding Young's unauthorized transfer of AMS funds were material, caused damage to the class, and that AMS's directors and officers acted with scienter. *See TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381, n. 12, 47 L.Ed.2d 668 (1976). Plaintiffs acknowledge that they were faced with the onerous task of putting on complex evidence and extensive expert testimony to prove AMS's 10b–5 liability. Plaintiffs further explain that AMS could be expected to argue with the full support of an expert that its disclosures regarding Young's unauthorized transfers were wholly adequate, that any omissions regarding Young's unauthorized

transfers were immaterial to the decision by investors whether to purchase AMS stock, and that AMS's officers and directors did not act with the requisite scienter for 10b–5 liability.

■ Plaintiffs also acknowledge that this case presents serious obstacles regarding the calculation of damages. The general measure of damages in Section 10(b) cases is the "out of pocket" damage measure. *See Randall v. Loftsgaarden,* 478 U.S. 647, 662, 106 S.Ct. 3143, 3152, 92 L.Ed.2d 525 (1986). Under this measure, a defrauded buyer may recover "the difference between the purchase price and the value of the stock [i.e. value absent the fraud] at the date of purchase." *Id.* (citing *Green v. Occidental Petroleum Corp.,* 541 F.2d 1335, 1344 (9th Cir.1976). Since fair value presumably will differ from the stock market price (the latter being inflated by the fraud), expert testimony would have been necessary to establish the amount—and indeed the existence—of actual damages. *See e.g., Sirota v. Solitron Devices Inc.,* 673 F.2d 566, 576–78 (2d Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). Plaintiffs' counsel contend that total damages could exceed $7.7 million, if all liability and damage issues were decided in their favor. AMS contends, however, that the price of its stock reflected industry and market trends, not the influence of alleged misrepresentations or fraud by any of its officers. As such, AMS's damages expert would have testified that damages were minimal, even assuming liability. Given these conflicting theories on the question of damages, the outcome of the case would turn on a "battle of experts." Under these circumstances, it would be hazardous to predict how much of a financial recovery the jury would award plaintiffs even if liability were shown.

Notwithstanding the above, factors exist which caution against approval of the settlement. Most notably, plaintiffs contend that they have estimated AMS's liability to be $7.7 million based upon expert analysis. Other than referring to their experts' reports, plaintiffs did not present any further evidentiary basis for this estimate of damages at the preliminary settlement approval

hearing, and have not done so since that time. Therefore, both the maximum liability which could be found in this case, and more importantly, whether the settlement compares favorably to the perceived maximum remains unclear. Ordinarily, this factor alone would give the Court pause, warranting a fuller evidentiary showing. However, in this complex 10(b) securities fraud case, plaintiffs most optimal estimate of recovery must be tempered by AMS's claim of no damages. Viewed in this light, the settlement is certainly in the "range of reasonableness" and "unquestionably better than another 'possibility'—little or no recovery at all." *In re Greenwich Pharmaceutical Sec. Litig.,* [1995 Transfer Binder] Fed.Sec.L.Rep. (CCH) § 92,519 at 92,522 (E.D.Pa.1995). *See also Pozzi v. Smith,* 1997 WL 28704 at *5–6 (E.D.Pa.1997) (finding that $2.4 million settlement in a securities fraud class action case was within the range of reasonableness under *Girsh* since plaintiffs' expert's estimate of $12 million in damages must be viewed against defendants' expert's estimate of little or no damages to the class); *Lake v. First Nationwide Bank,* 900 F.Supp. 726, 733 (E.D.Pa.1995) (explaining that since the plaintiffs were unlikely to prevail on the issue of liability under § 10 of the Real Estate Settlement Procedures Act, the settlement was within the range of reasonableness under *Girsh* ).

One additional factor, AMS's ability to withstand a greater judgment, is basically neutral since plaintiffs did not make a full evidentiary showing on this issue.

To be sure, the legal and factual difficulties inherent in this case, when added to the uncertainty of a lengthy and complex trial, underscore the desirability of the settlement. In sum, the Court finds that applying the *Girsh* factors, under the circumstances of the case, the AMS settlement is fair, adequate, and reasonable. Therefore, the Court will approve the final settlement.

### B. The Deloitte Settlement

■ The parties also seek final court approval of the D & T settlement in the amount of $350,000 in cash. Along the lines relied upon under *Girsh* for approval of the AMS

settlement, the Court finds that a number of factors weigh in favor of approval of the D & T settlement. First, this securities class action was unquestionably complex and expensive to litigate. Second, out of approximately 2,000 plaintiffs comprising the class, including a considerable number of sophisticated institutional investors, there have not been any objections to the settlement or opt-outs. Third, the Court is satisfied that the opinions of counsel on the issue of settlement were well-informed after conducting approximately three years of discovery in this matter prior to settlement. Fourth, much like their case against AMS, plaintiffs' case against D & T involved serious difficulties on the questions of liability and damages.

One additional factor, D & T's ability to withstand a greater judgment, is basically neutral since plaintiffs did not make any evidentiary showing on these issues.

Notwithstanding the above, the same factors which cautioned against approval of the AMS settlement, e.g. the maximum liability which can be found and the range of reasonableness of the settlement in light of the perceived maximum liability, likewise caution against approval of plaintiffs' settlement with D & T. Nevertheless, since plaintiffs' most optimal estimate of damages in this complex securities case must be tempered by D & T's estimate of little or no damages, the Court finds that the settlement is certainly in the range of reasonableness and unquestionably better than the possibility of little or no recovery at all. *See infra* discussion at 14–15.

Therefore, on balance, the Court finds that applying the *Girsh* factors the D & T settlement is fair, adequate, and reasonable.[6]

### 4. Approval of the Attorneys' Fee Award

"A litigant who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reason-able attorney's fee from the fund as a whole." *Boeing Co., v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). Plaintiffs' counsel have requested attorneys' fees in the amount of $375,000, payable as one-third cash, one-third Nextel common stock, and one-third Nextel warrants. The attorneys' fee requested by plaintiffs' counsel, $375,000, represents 33.3% of the two settlements, which have an aggregate value of $1,125,000. Plaintiffs' counsel argue that their request is reasonable, especially given the significant amount of time devoted to litigating this matter during the past four-and-one-half years.

Nevertheless, as in all class actions settlements, the Court remains obligated to review thoroughly the reasonableness of the fee application before granting its approval. *See General Motors*, 55 F.3d at 819–20. There is an acute need for close judicial scrutiny of fee arrangements in common fund class action settlements because of "the danger ... that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees." *General Motors*, 55 F.3d at 768, 820 (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir.1991)). Indeed, "special problems exist in assessing the reasonableness of fees in a class action suit since class members with low individual stakes in the outcome often do not file objections, and the defendant who contributed to the fund will usually have no interest in how the fund is divided between the plaintiffs and class counsel." *Swedish Hosp. Corp. et al., v. Shalala*, 1 F.3d 1261, 1265 (D.C.Cir.1993); *see also*, Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 255 (1985) ("In these situations, the plaintiffs' attorney's role changes from one of fiduciary for the clients to that of a claimant against the fund created for the clients' benefit.").

---

6. Prior to the hearing on final approval of the settlements, the Court received a letter from plaintiffs' counsel dated December 24, 1996, which requested that the law firm of Weinstein, Kitchenoff, Scarlato, and Goldman, Ltd. ("WKS & G") be named as the sole escrow agent for both the AMS and D & T settlements. Counsel explained that this was necessary in order to secure a single bond for the full value of the settlement funds, rather than having to purchase two bonds under the original escrow arrangement. In the interest of protecting the settlement funds until they are distributed to the class and keeping the cost of purchasing insurance to a minimum, the Court will approve counsel's request.

Therefore, the fee application must be subject to "thorough judicial review" to ensure that no overreaching occurs and that counsel and class members alike are treated fairly. *General Motors,* 55 F.3d at 819.

 There exist two methods of calculating attorneys' fee awards—the percentage of recovery method, under which an attorney receives a fixed percentage of the settlement fund, and the lodestar method, which requires that a court multiply the hours reasonably expended on the litigation by a reasonable hourly rate. *See General Motors,* 55 F.3d at 821. The Third Circuit has counselled district courts that in common fund cases the percentage of recovery method to calculate attorneys' fees is ordinarily the one most appropriate, and that the lodestar method should be reserved for statutory fee cases or instances where the nature of the settlement evades the precise evaluation needed for the percentage of recovery method. *See General Motors,* 55 F.3d at 820 ("... we believe that each method has distinct advantages for certain kinds of actions ..."). "Neither the lodestar method nor the percentage of recovery methods, however is mandatory. Thus, the district court has wide discretion to decide which method of fee calculation to apply." *Id.* at 821. In any event, whichever method the district court selects as the primary method for determining the reasonableness of the fee, it is "sensible for a [district] court to use a second method of fee approval to cross check its conclusion under the first method." *Id.*

Since the instant suit involves a straightforward common fund case, the Court will employ the percentage of recovery method as the primary method for determining the appropriate amount of attorneys' fees. Although no general rule exists as to what is a reasonable percentage, courts have found that an award of 25% of the common fund is ordinarily reasonable. *See In re Pacific Enterprises Sec. Lit.,* 47 F.3d 373, 378 (9th Cir.1995) (concluding that the appropriate benchmark that district courts should use for attorneys' fee awards in common fund cases is 25% of the amount of the fund); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1272 (D.C.Cir.1993) (explaining that the "majority of common fund class action fee awards fall between twenty and thirty percent"); *See In re SmithKline Beckman Corp. Secur. Lit.,* 751 F.Supp. 525, 533 (E.D.Pa.1990) (explaining that courts have found fee awards ranging from 19 to 45 percent of the common fund to be fair and reasonable); *see also,* 3 H. Newberg, *Newberg on Class Actions,* 3rd Ed. at 190 (stating normal range of common fund fee awards is 20–30%). Having examined both the fee petition submitted by plaintiffs' counsel and being thoroughly familiar with this litigation, and finding no significant reason why the Court should adjust the 25% benchmark upward or downward, the Court finds that a fee award of 25% of the settlement fund, representing $281,500, is appropriate in this case. *See e.g., Pozzi v. Smith,* 1997 WL 28704 at *7 (E.D.Pa. January 24, 1997) (awarding a 25% attorneys' fee in a common fund case).[7]

The Third Circuit has counselled, however, that even when the district court applies the percentage of recovery method to determine counsel fees, it should cross-validate the result against the lodestar method "to assure that the precise percentage awarded does not create an unreasonable hourly fee." *General Motors,* 55 F.3d at 822. Under the lodestar

---

7. Under the so-called "sliding scale" approach, which has been employed by some courts in "megafund" class action cases where the size of the common fund is considerably larger than is involved in this case, "the percentage of recovery fee should decrease as the size of the common fund increases." *In re Smithkline Beckman Corp. Sec. Lit.,* 751 F.Supp. 525, 534 (E.D.Pa.1990). Counsel argues that unlike those megafund cases which have used the sliding-scale approach to avoid affording a windfall to counsel, there is no such danger of a windfall in this matter in light of the relatively modest size of the common fund. Absent such a danger, counsel argues, an attorneys' fee award of 33% of the common fund is appropriate. To be sure, the Court does not dispute the fact that this is not a megafund case which could trigger the use of the "sliding scale" approach to reduce the percentage of recovery of attorneys' fees. *See e.g., In re Greenwich Pharmaceutical Securities Litigation,* 1995 WL 251293 at *7 (E.D.Pa.1995) (recognizing that the sliding scale approach to reduce the percentage of recovery of attorneys' fees is not applicable in non-megafund class action cases). Nevertheless, the Court finds that under the circumstances of this case an award of attorneys' fees for 25% of the common fund is reasonable.

method, the Court must first multiply the number of hours spent by class counsel in this litigation by a number representing a reasonable hourly rate. *See Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973). After this amount, the lodestar, is determined, the Court may make adjustments as necessary. *See In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d Cir. 1984).

In their fee petition, counsel calculate the lodestar amount as $958,357.[8] Counsel acknowledge, however, that they do not seek recovery under the lodestar method since applying that method for awarding attorneys' fees in this case would consume almost the entire value of the two settlement funds. Instead, counsel argue that a fee award of 33.3% of the settlement funds, or $375,000, is appropriate under the circumstances since this award would be equivalent to compensating counsel at an average rate of $110 per hour for the time which they spent on this matter.

In their submissions to the Court, counsel simply disclosed the total number of hours that attorneys at the three law firms involved worked on the case (3,401) and the respective billing rates of those attorneys. No further breakdown or description was provided such as detailed time sheets specifying the type of work done to show that the amount of time which they devoted to this litigation was reasonable and not excessive or redundant. Furthermore, counsel did not submit any evidence that the charged rate is the "community billing rate charged by attorneys of specialized skill and experience performing work of similar complexity. . . ." *See Student Public Interest Research Group of New Jersey, Inc. v. AT & T Bell Laboratories*, 842 F.2d 1436, 1451 (3d Cir.1988). While counsel make mention of the fact that their billing rates were approved in a recent securities fraud class action in federal district court in the Western District of Texas, the Court cannot conclude with certainty based upon that information alone that counsel's billing rates are the community billing rates in comparable class action cases in the Eastern District of Pennsylvania.[9] The absence of detailed time sheets and evidence of the community billing rate makes the use of the lodestar method inapplicable in this case.

Therefore, the Court will award counsel attorneys' fees in the amount of 25% of the total settlements, or $281,500.[10]

---

8. The Court recognizes that in certain cases the lodestar amount may be enhanced with a quality multiplier where the settlement was "achieved with unusual efficiency, and with little expenditure of attorney time and expense," *In re Fine Paper Antitrust Litig.*, 751 F.2d at 589, and a contingency multiplier to reflect "the contingent nature of [the lawsuit's] success" and the "delay in the receipt of payment for services rendered." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir.1976). In their submissions, however, plaintiffs' counsel do not seek any type of lodestar enhancement.

9. Counsel contends that the rates charged in this case are appropriate based upon the fact that their rates were previously approved in another class action securities matter in federal district court in the Western District of Texas. In support of their argument, counsel have attached an order from the federal court in Texas. For purposes of accuracy, however, the Court notes that while the attached order from the federal district court in Texas approved counsel's rates as "fair and reasonable," it makes no mention of the rates charged by counsel and subsequently approved by the federal court in that case.

10. The Court will breakdown the total attorneys' fee award of $281,500 into the following amounts and forms of consideration: $152,-083.33 in cash, $64,583.33 in shares of common stock, and $64,583.33 in warrants. The Court notes that both common stock and warrants have been approved as appropriate forms of consideration for attorneys' fees in class action settlements. *See e.g., In re U.S. Bioscience Securities Litigation*, 155 F.R.D. 116 (E.D.Pa.1994); *In re Ames Department Stores, Inc., Debenture Litigation*, 835 F.Supp. 147 (S.D.N.Y.1993).

The Court has arrived at these amounts as follows. The Court will award counsel attorneys' fees in the amount of 25% of the D & T settlement fund, or $87,500 in cash. The Court will also award counsel attorneys' fees in the amount of 25% of the AMS settlement fund, or $193,750. Counsel has requested that the Court divide their fee from the AMS fund into ⅓ amounts of cash, common stock, and warrants. The Court will approve counsel's request and therefore will award attorneys' fees for the AMS settlement as follows: $64,583.33 in cash, $64,583.33 in shares of common stock, and $64,583.33 in warrants.

The Court recognizes that the use of stock and warrants in payment of attorneys' fees injects a

4. Approval of Reimbursement Expenditures

Plaintiffs' counsel for the three law firms involved seek to recover $204,316.26 in litigation costs and out-of-pocket expenses. Counsel seeks reimbursement for the following expenses:

| | |
|---|---|
| Expert witnesses | $118,478.66 |
| Transcript fees | $ 15,288.14 |
| Photocopying | $ 14,476.60 |
| Travel | $ 9,266.58 |
| Notice/Settlement Administration | $ 35,369.69 |
| Computer–Aided Legal Research | $ 8,015.42 |
| Others [11] | $ 1,260.63 |

As shown above, the bulk of counsel's expenses, $118,478.66, are alleged to have been incurred from expert witness fees. To support their request, counsel submitted time sheets which breakdown the number of billable hours for each individual, briefly describe the work performed for those hours, and list the corresponding billing rates. Counsel included the following chart which indicates the fees charged by the damages expert retained in this matter and the three associates from that expert's firm who also worked on the case.

Prior to March 1, 1996:

| Person | Hours | Rate | Total |
|---|---|---|---|
| R.A. Miller | 24.09 | $275 | $6,624.75 |
| K.W. Gross | 0 | $225 | $0 |
| P. Mulholland | 136.30 | $175 | $23,852.50 |
| T. Collett | 21.15 | $75 | $1,586.25 |

After March 1, 1996:

| Person | Hours | Rate | Total |
|---|---|---|---|
| R.A. Miller | 82.67 | $350 | $28,934.50 |
| K.W. Gross | 2.45 | $285 | 698.25 |
| P. Mulholland | 35.50 | $225 | $7,987.50 |
| T. Collett | 6 | $100 | $600 |

Total Hours and Fees

| Person | Hours | Total |
|---|---|---|
| R.A. Miller | 106.76 | $35,559.25 |
| K.W. Gross | 2.45 | $698.25 |
| P. Mulholland | 171.80 | $31,840 |
| T. Collett | 27.15 | $2,186.25 |

Based upon the above chart, counsel claimed $70,640 in expenses for expert witness fees charged by their damages expert and his associates. While counsel have not provided the Court with an independent basis upon which to conclude that the rates charged reflect the community rate at which experts of similar background and experience are actually compensated, the Court concludes based upon its own experience and observations that the rates charged prior to March 1, 1996, are not unreasonable. However, in the absence of evidence that the community billing rate for such experts increased after March 1, 1996, the Court will disallow the increased rates as being unreasonable. Therefore, the Court will award counsel $62,011.50 in expenses for the damages expert and his associates.

Counsel also claimed $47,275 in expenses for a liability expert which they retained in this matter. The Court concludes

---

measure of uncertainty into the reasonableness of the fee because counsel's ultimate recovery is a function of the marketplace. Nevertheless, the Court finds that in this case two factors counsel in favor of approval of the use of stock and warrants as part of the attorneys' fees. First, based upon expert analysis, the parties have agreed upon the respective values of the stock and warrants, and have satisfied the Court that the settlements are fair, adequate, and reasonable. Second, since counsel themselves are willing to share the same risk as class members as to the ultimate recovery for the value of the stock and warrants, the Court finds that counsel's request is appropriate.

11. Others includes the following expenses:

| | |
|---|---|
| Postage | $ 70.14 |
| Telephone (long distance) | $491.80 |
| Document retrieval | $ 36.54 |
| Fax charges | $238.00 |
| Miscellaneous | $100.00 |

that the single rate reported of $200 per hour is reasonable and will therefore award counsel the full amount in expenses claimed for the liability expert.

Pursuant to the above discussion, the Court will award counsel a total of $109,286.50 in expenses for expert fees.

■ In their petition for expenses, counsel seek reimbursement for $9,266.58 in travel expenses. Counsel from one of the three law firms involved ("counsel # 1") requested reimbursement for $7,765.42 in travel expenses and has documented this amount in an expense report affidavit containing itemized submissions. While counsel from the other two law firms ("counsel # 2" and "counsel # 3") supplied expense report affidavits, counsel # 2 and counsel # 3 did not produce any documentation upon which the Court could examine the accuracy and reasonableness of their request. Therefore, the Court finds that the itemized submissions for $7,765.42 are adequately documented and reasonable and therefore will reimburse counsel for that amount only.

■ In their petition for expenses, counsel seek reimbursement for $14,476.60 in photocopying expenses. Counsel # 1 has requested reimbursement for $9,760.98 in photocopying expenses and has documented his request in an expense report affidavit containing itemized submissions. While counsel # 2 and counsel # 3 supplied expense report affidavits, they did not produce any documentation upon which the Court could examine the accuracy and reasonableness of their request. Therefore, the Court finds that the itemized submissions for $9,760.98 are adequately documented and reasonable and therefore will reimburse counsel for that amount only.

■ In their petition for expenses, counsel seek reimbursement for legal research performed on LEXIS and Westlaw in the amount of $8,015.42. While the Third Circuit has explained that recovery for out-of-pocket expenses for computer-aided legal research performed on LEXIS or Westlaw is entirely appropriate, it has cautioned nevertheless that "the amount of use must be reasonable in order to be allowed." *Wehr v. The Burroughs Corporation,* 619 F.2d 276 (3d Cir. 1980). In their submissions to the Court, counsel described the nature of the research performed on LEXIS and Westlaw and explained that they exercised caution in limiting their use of these databases to performing legal searches rather than upon time-consuming LEXIS and Westlaw print-outs from federal reporter volumes. However, counsel have not provided the Court with any information regarding the total number hours billed for LEXIS or Westlaw research. Without such documentation, the Court cannot conclude that the amount of time which counsel spent on LEXIS and Westlaw research was reasonable as opposed to redundant or excessive. Therefore, the Court finds that $6000 (roughly 75%) is a reasonable cost for the legal searches performed by counsel on LEXIS and Westlaw and will reimburse counsel for that amount.

In their petition for expenses, counsel seeks reimbursement for $35,369.69 in notice and settlement administration costs, $15,288.14 in transcript fees, and $1,260 in miscellaneous expenses. The Court finds that these expenses are adequately documented and reasonable and therefore will reimburse counsel for these amounts.

Based upon the above expenses which the Court has found to be reasonable, the Court will award counsel $184,730.73 in total expenses.[12]

## 5. Approval of Class Representative Fee

Plaintiff class representatives Frank and Kathleen Seidman ("class representatives") seek approval of payment to compensate

---

12. The Court recognizes that under the Private Securities Litigation Reform Act enacted by Congress in 1995, ("the Act"), Pub.L. 104–67, 109 Stat. 737 (1995), "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u–4(a)(6). Since Congress intended the Act to be applied prospectively, however, this provision is not implicated in the instant class action. Nevertheless, it strikes the Court that the total award of attorneys' fees and expenses in this case, $465,900.73, representing 41% of the common fund, stands on the borderline of reasonableness.

them for their role in initiating this shareholders class action. The requested payment is $5000. The class representatives seek to recover this amount from the D & T settlement fund only.

■ The Court will compensate the class representatives for the time they spent on matters connected to the litigation in this case. Since class representative Kathleen Seidman has not provided the Court with any documentation as to the time which she spent on matters related to this litigation, the Court shall not award her a class representative fee.

Pursuant to the Court's request, class representative Frank Seidman has furnished the Court with an adequate accounting that the time he spent working on matters related to this litigation is approximately thirty-two hours. Based on the time records and the representations made by counsel as to the activities undertaken by Frank Seidman on behalf of the class, the Court shall award him a class representative fee totaling $1280 (32 hours at a rate of $40.00 per hour) from the D & T settlement fund as compensation for the actual time which he spent on this litigation.[13] *See e.g., Pozzi v. Smith,* 952 F.Supp. 218, 227 (E.D.Pa.1997) (awarding class representative fee of $1600 to compensate the class representative for her actual time and expenses); *Lake v. First Nationwide Bank,* 900 F.Supp. 726, 737 (E.D.Pa.1995) (awarding class representative fee of $500 to both class representatives to compensate them for their actual time and expenses). No other fee, other than the payment to which he may entitled as a member of the class, shall be paid to class representative Frank Seidman.

## III. CONCLUSION

The Court grants the request for certification of a final judgment and order under Rule 54(b). The Court further awards plaintiffs' counsel attorneys' fees in the amount of $281,250, and reimbursement for litigation costs in the amount of $184,730.73. A class representative fee in the amount of $1280 is awarded to Frank Seidman to account for the actual time and costs he spent on matters relating to this litigation.

Appropriate findings and an order shall be entered.

## FINDINGS AND ORDER

**And Now,** this **6th** day of **March, 1997,** the Court makes the following findings and issues the following order:

This matter came for a hearing before the undersigned on January 3, 1997, on the motion of plaintiffs for final approval of the class action settlements entered into between the parties to the action. Defendants American Mobile Systems, Inc. ("AMS") and Deloitte and Touche (D & T) (hereinafter referred to collectively as "defendants"), by and through their counsel, appeared in support of said motion.

Plaintiffs were represented by David H. Weinstein, Paul J. Scarlato, and Robert S. Kitchenoff of the law firm of Weinstein, Kitchenoff, Scarlato, and Goldman, 1608 Walnut Street, Philadelphia, Pennsylvania; Scott H. Mustin of the law firm of Krekstein, Wolfson, Mustin and White, 1600 Market Street, Philadelphia, Pennsylvania; and William E. Hoese of the law firm of Kohn, Swift, and Graf, P.C., 1101 Market Street, Philadelphia, Pennsylvania. AMS was represented by David L. Braverman and Michael N. Feder of the law firm of Fellheimer, Eichen, and Braverman, P.C., 1650 Market Street, Philadelphia, Pennsylvania. D & T was represented by Walter M. Einhorn, Jr. and Geoffrey A. Kahn of the law firm of Ballard, Spahr, Andrews, and Ingersoll, 1735 Market Street, Philadelphia, Pennsylvania. The issues with respect to certification of a final judgment and order under Fed.R.Civ.Pro. 54(b), final approval of the proposed settle-

---

**13.** Even though the Act does not apply in this case, the Court notes that under the Act, a class representative fee in the form of a bounty payment, such as has been requested in this case by the class representatives as compensation for their role in initiating the class action, is prohibited. Under the Act, the class representatives cannot accept any payment for serving as a representative party beyond their *pro rata* share of the settlement or final judgment. *See* 15 U.S.C. § 78u–4(a)(2)(A)(6).

ments, attorneys' fees and costs sought by plaintiffs' counsel, reimbursement of out-of-pocket expenses sought by plaintiffs' counsel, and award of a class representative fee were briefed and argued. Based upon such briefs and arguments, and upon other files and records in this matter, the Court **FINDS** and **ORDERS** as follows:

1. This consolidated action was commenced against defendants in the United States District Court in the Eastern District of Pennsylvania, on August 5, 1993.

2. The claims asserted by plaintiffs allege violations of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, the rules and regulations of the Securities and Exchange Commission promulgated thereunder, and a common law cause of action for negligent misrepresentation.

3. This action may for all purposes be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), with the class consisting of all persons who purchased common shares of AMS stock between July 1, 1990, and March 2, 1992 ("the class period").

4. The lead plaintiffs as class representatives fairly and adequately represents the interest of the class.

5. The notice previously given to class members in this action satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

6. The settlement is fair, adequate, and reasonable as to each member of the class.

7. Each member of the class is bound by the terms of the settlement agreements, including those regarding the release and covenant not to sue provided for in the settlement agreements between the parties.

8. All sums to be paid under the terms of the settlement agreements shall be credited or paid to members of the class, as provided in the settlement agreements.

9. All claims in the litigation against defendants other than William C. Young are **DISMISSED** on the merits and with prejudice. Each member of the class is permanently **ENJOINED** from bringing against defendants or any of its shareholders, directors, officers, employees or other released parties, as identified in the settlement agreements, any claim regarding the matters released in this litigation, as identified in the settlement agreements. For purposes of this release, AMS means any and all of its predecessors, successors, former and present subsidiaries and affiliates, any entity now or in the past controlling or controlled by it, including Nextel Communications, Incorporated. Defendants are permanently **ENJOINED** from bringing against any member of the class and their agents, including plaintiffs' counsel and experts, any claim regarding the matters released in this litigation, as identified in the settlement agreements.

10. Pursuant to counsel's letter which the Court received on December 24, 1996, the Court will approve counsel's request to have the law firm of Weinstein, Kitchenoff, Scarlato and Goldman named as the sole escrow agent for the settlements for purposes of purchasing a single insurance bond.

11. The Court hereby retains jurisdiction over all matters in this litigation including but not limited to the interpretation, administration, implementation, effectuation, and enforcement of the settlement agreements between the parties.

12. The Court has reviewed the petition for attorneys' fees and has determined that counsel shall receive, as compensation for their legal services, $281,250, to be paid from the settlement funds in accordance with the memorandum filed by the Court on this date.

13. The Court has reviewed the petition for reimbursement of out-of-pocket expenses and has determined that counsel shall receive, as reimbursement for their litigation costs and expenses, $184,730.73, to be paid from the settlement funds in accordance with the memorandum filed by the Court on this date.

14. The Court has reviewed the requests for class representative fees and has concluded that a fee totaling $1280 is appropriate, and shall be paid to class representative Frank Seidman in accordance with the memorandum filed by the Court on this date.

15. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court hereby

directs the entry of a final judgment in favor of defendants AMS and D & T and against plaintiffs.

**AND IT IS SO ORDERED.**

## ORDER–MEMORANDUM ON RECONSIDERATION

**And Now,** this **3rd** day of **April, 1997,** upon consideration of the joint motion by defendants American Mobile Systems, Inc. ("AMS") and Deloitte & Touche ("D & T") for the Court to supplement the memorandum and findings and order of March 6, 1997 (doc. 116), and plaintiffs' counsel's motion for reconsideration of the Court's memorandum and order regarding reimbursement of litigation expenses (doc. 117), it is hereby **ORDERED** that the motion to supplement the memorandum and findings and order, which the Court will construe as motion for correction of a clerical error pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, is **GRANTED,** and the motion for reconsideration is **DENIED** for the following reasons:

### I. FACTS

1. On January 3, 1997, the Court conducted a final hearing in this class action securities case. On March 6, 1997, the Court issued a memorandum and an accompanying findings and order.

2. On March 18, 1997, defendants American Mobile Systems. Inc., and Deloitte & Touche (hereinafter collectively referred to as "defendants") filed a joint motion requesting that the Court (1) supplement the findings and order to include a provision which the parties had previously agreed to in the stipulations of settlement barring all contribution and indemnity claims against the defendants relating to the underlying subject matter of the litigation; and (2) correct a clerical error in the memorandum and findings and order regarding the end date of the class period. (doc. no. 116).

3. On March 20, 1997, plaintiffs' counsel filed a motion for reconsideration of the

memorandum and findings and order denying reimbursement for certain out-of-pocket expenses. (doc. no. 117).

### II. DISCUSSION

#### A. RULE 60(a)

4. Rule 60(a) of the Federal Rules of Civil Procedure provides as follows:

**(a) Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate courts.

5. The Third Circuit has made clear that a clerical error within the meaning of FRCP 60(a) "must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature." *U.S. v. Guevremont,* 829 F.2d 423, 427 (3d Cir. 1987) (quoting *Dura–Wood Treating Co. v. Century Forest Indus.,* 694 F.2d 112, 114 (5th Cir.1982).

6. In the instant case, the Court inadvertently omitted the provision barring all contribution and indemnity claims against the defendants from the findings and order. Moreover, on page four of the memorandum and on page two of the findings and order, the Court incorrectly cited the date ending the class period as March 2, 1992, as opposed to the correct date of March 24, 1992.

7. Therefore, to correct both of these clerical errors pursuant to FRCP 60(a), it is hereby **ORDERED** that the findings and order is amended to include the provision barring all contribution and indemnity claims against the defendants.[1] It is **FUR-**

---

1. The following provision, which was previously agreed to by the parties in the stipulations of settlement, and was also submitted by the parties in the proposed order, and which the Court had

intended to include in the initial findings and order, is hereby approved:

This order permanently bars and enjoins any and all claims for contribution and indemnity

THER ORDERED that the date ending the class period mentioned on page four of the memorandum and page two of the findings and order is amended to read March 24, 1992, not March 2, 1992.

## B. MOTION FOR RECONSIDERATION

■ 8. The Third Circuit has made clear that "the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986) (citing *Keene Corp. v. International Fidelity Insurance Co.,* 561 F.Supp. 656, 665 (N.D.Ill. 1982). Likewise, the Third Circuit has made equally clear that "[w]here evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Id.*

■ 9. Dissatisfied with the Court's decision, plaintiffs' counsel attempt to substantiate their claim for reimbursement of an additional $13,864.22 in out-of-pocket expenses with more detailed documentation of their expenses which the Court disallowed for lack of documentation after the hearing on January 3, 1997. Since counsel has not even alleged, much less proved, that this information was not available prior to the date of the Court's decision of March 6, 1997, it is plainly not newly discovered evidence and therefore cannot be considered in support of their motion for reconsideration.

10. Since plaintiffs' counsel have not alleged any manifest error of law or fact nor have they presented any newly discovered evidence in support of their motion for reconsideration, the Court will therefore deny the motion.[2]

**AND IT IS SO ORDERED.**

by any person or entity, including without limitation the defendants in the Action, which have been, or could have been or could be asserted against defendants American Mobile Systems, Inc. ("AMS") and Deloitte & Touche, ("D & T"), arising directly or indirectly out of the released claims or the facts, transactions, events, acts or omissions underlying the subject matter of the Action, and to the extent legally permissible, all other claims, however denominated, which have been, could have been, or could be asserted against AMS or D & T arising directly or indirectly out of the released claims or the facts, transactions, or events, acts or omissions underlying the subject matter of the action.

The proportionate share rule shall be applied to reduce any judgment that plaintiffs or the class may eventually be awarded against any non-settling defendant and/or against any person or entity bound by the preceding paragraph (hereinafter "judgment defendant") with respect to any claim relating to AMS for which the judgment defendant would have had a right of action in the absence of the entry of the settlement bar set forth in the preceding paragraph.

Approval of the contribution and indemnification bar order at this date is warranted for two reasons. First, having been advised previously by the parties that plaintiffs may seek legal action in the future against the non-settling third-party defendant, this provision is a material term of the settlement agreement and should have been approved along with the terms included by the Court in the initial findings and order. Second, the Third Circuit has approved the use of similar bar orders under like circumstances. *See Eichenholtz v. Brennan,* 52 F.3d 478, 485–87 (3d Cir.1995) (concluding that district court did not abuse its discretion by approving agreement settling securities litigation which included provision that contribution and indemnification of nonsettling defendants would be extinguished where the district court adopted the proportionate judgment reduction rule).

2. In support of their motion, plaintiffs' counsel refer the Court to the decision of another district court which granted a motion for reconsideration and awarded reimbursement of expenses incurred by plaintiffs' counsel in a securities class action case where additional documentation was provided to the district court by counsel after the expenses had been disallowed. *See J/H Real Estate Inc., v. Abramson et al.,* 951 F.Supp. 63 (E.D.Pa.1996). However, the Court respectfully disagrees with the district court's ruling in *Abramson* insofar as it found an "interest of justice" exception to the general principle that a motion for reconsideration should be denied where a moving party has not presented any newly discovered evidence nor alleged a manifest error of law or fact.

In finding an interest of justice exception, the district court in *Abramson* relied upon the decision of another district court in *Karr v. Castle,* 768 F.Supp. 1087, 1093 (D.Del.1991), *aff'd. with-*

*out opinion sub nom. U.S. v. Carper,* 22 F.3d 303 (3d Cir.1994), *cert. denied,* 513 U.S. 1084, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995). The Court elects not to follow either *Abramson* or *Karr* in the instant case for two reasons. First, *Karr* was affirmed without opinion by the court of appeals and therefore, like the decision of the district court in *Abramson,* it is not binding authority upon the Court in this case. Absent a pronouncement of a manifest injustice exception by the Third Circuit, the Court believes that it is bound by the well travelled standard set forth in *Harsco Corporation v. Zlotnicki,* 779 F.2d at 909.

Moreover, unlike the district court in *Abramson,* the Court does not find *Karr* applicable in this case. *Karr* involved the plaintiff's motion for reconsideration of the district court's order granting defendant's motion to intervene as a party defendant. The district court in *Karr* reasoned that because it had incorrectly assumed that plaintiff was unopposed to the defendant's motion for intervention based upon a certificate attached to the defendant's motion for intervention, "this sort of misunderstanding is the type of situation in which the [district] court should reconsider its prior order." *Karr,* 768 F.Supp. at 1091. Because there was clearly no such misunderstanding present in the instant case, the Court finds the rationale of *Karr* unpersuasive in this case.

Even if the Third Circuit were to recognize an interest of justice exception to the general reconsideration rule set out in *Harsco Corporation,* the Court finds that it would not be applicable here. In this case, plaintiffs' counsel were afforded an opportunity at the hearing on January 3, 1997, to present evidence regarding reimbursement for litigation expenses, and again following the hearing when the Court permitted counsel to submit further documentation regarding their expenses. Under the circumstances, the Court does not find that prohibiting counsel from having a third bite at the apple to be such a draconian result as to rise to the level of a manifest injustice.